**BETHENERGY MINES INC., Canterbury Coal Company, Greenwich Collieries, Division of Pennsylvania Mines Corporation et al., Petitioners**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 14, 1996.

Decided April 12, 1996.

Reargument Denied June 7, 1996.

Stanley R. Geary, for Petitioner.

George Jugovic, Jr., Assistant Regional Counsel, for Respondent.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Bethenergy Mines Inc., et al. (Coal Companies) appeal from the order of the Environmental Hearing Board (Board) denying their petition for attorney's fees and costs pursuant to Section 4(b) of the Surface Mining Conservation and Reclamation Act[1] (SMCRA), 52 P.S. § 1396.4(b), and Section 5(g) of the Bituminous Mine Subsidence and Land Conservation Act (BMSLCA), 52 P.S. § 1406.5(g).

The Coal Companies are 14 underground bituminous coal operators who, between May 24, 1985, and July 6, 1989, filed, among other appeals,[2] 52 appeals of Coal Mining Activity Permits (CMAPs) with the Department of Environmental Protection (Department), contending that those permits contained objectionable standard conditions. Ultimately, the Coal Companies were granted summary judgment on their challenges to the standard conditions in the CMAPs and the Board held those standard conditions to be invalid.

After obtaining summary judgment, the Coal Companies, on July 6, 1993, filed a petition for costs and attorney's fees[3] before the Board.[4] Section 4(b) of the SMCRA and Section 5(g) of the BMSLCA contain identical fee recovery provisions which, in relevant part, provide:

> ... Any person having an interest which is or may be adversely affected by any action of the department under this section may proceed to lodge an appeal with the Environmental Hearing Board in the manner provided by law and from the adjudication of said board such person may further appeal as provided by Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure.) The Environmental Hearing Board, upon the request of any party, *may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings*

1. 52 P.S. § 1396.4(b).

2. The other appeals filed by the Coal Companies during this period include appeals filed from ten coal refuse disposal permits and three coal preparation plant permits.

3. In *Big "B" Mining Company v. Department of Environmental Resources*, 142 Pa.Cmwlth. 215, 597 A.2d 202 (1991), *petition for allowance of appeal denied*, 529 Pa. 652, 602 A.2d 862 (1992), we held that the recovery of attorney's fees and costs incurred in connection with a permit appeal is permitted under the plain meaning of the language of Section 4(b) of the SMCRA. In determining that costs incurred in connection with permit appeals were recoverable by permittees, we rejected the argument that the legislative history behind the federal counterpart to the SMCRA should be relied upon. Rather, we held that because there was no ambiguity in the statute as it applied to the recovery of costs and attorney's fees in permit proceedings, we could not rely upon the congressional or legislative intent behind the federal statute to conclude that recovery of those costs was unauthorized.

4. Subsequently, five additional CMAP appeals were dismissed as moot, and attorney fee petitions filed with respect to those appeals were consolidated with the original fee petition filed on July 6, 1993.

*pursuant to this section ...* (Emphasis added).

52 P.S. § 1396.4(b) and 52 P.S. § 1406.5(g).

While for fees incurred in 1985 and 1986, five of the Coal Companies paid the legal fees and costs associated with the CMAP litigation, legal fees and costs incurred between January of 1987 through June of 1993 were paid by the Coal Companies' trade association, the Pennsylvania Coal Association (PCA).[5] The PCA is a trade association which represents the interests and general welfare of its coal producing members and the bituminous coal industry in the Commonwealth. Among the purposes of the PCA is the coordination and funding of litigation which its members believe has an impact on them or the coal industry in general. The Coal Companies are members of the PCA. Members of the PCA pay dues based upon the amount of coal they produce each year. The dues paid by its members are the PCA's primary source of income. Due to the general impact of the standard conditions on the coal mining industry, the PCA paid the attorney's fees and costs associated with the Coal Companies' CMAP appeals.

■ Upon the Department's motion for summary judgment, the Board granted fees paid directly by the Coal Companies in 1985 and 1986 directly to their counsel, but denied fees that were paid by the PCA on behalf of the Coal Companies because they did not "incur" those fees as required by Sections 4(b) and 5(g). Relying on *Webster's Ninth New Collegiate Dictionary* definition, "to become liable for or subject to," as the plain meaning of to "incur", the Board held that because the PCA assumed the obligation to pay the legal costs, the Coal Companies were not "liable for or subject to" the attorney's fees and costs for which they seek reimbursement. If it were to give a more expansive reading to this provision, the Board reasoned that would go beyond the purpose of awarding attorney's fees and costs to a prevailing party[6] which was "merely to make the winning party whole," not to make them more than whole by reimbursing costs they did not themselves "incur". On September 11, 1995, the Board approved a stipulation of partial settlement and dismissed the Coal Companies' appeals, including the fee petition. The instant appeal followed.[7]

■ The sole issue on appeal is whether the Board is without discretion to award fees because "incurred" as used in Sections 4(b) of the SMCRA and 5(g) of the BMSLCA means incurred by the parties and not by some other entity, such as a trade association.[8] The Coal Companies argue that the

---

**5.** The prior trade association which represented the Coal Companies was the Keystone Bituminous Coal Association (KBCA). After the Pennsylvania Coal Mining Association merged with the KBCA, the trade association became known as the Pennsylvania Coal Association (PCA) on January 1, 1988. Although part of the fees and costs at issue were funded by the KBCA, for simplicity, we will refer only to the PCA in this opinion, but note that the KBCA was also responsible, as the Coal Companies' prior trade association, for the funding of the costs and fees at issue in this appeal.

**6.** In order to recover attorney's fees and costs under Section 4(b) of SMCRA and 5(g) of BMSLCA, an applicant must establish that the following elements have been fulfilled:

(1) a final order must have been issued;
(2) the applicant must be the prevailing party;
(3) the applicant must have achieved some degree of success on the merits; and
(4) the applicant must have made a substantial contribution to a full and final determination of the issues.

*Kwalwasser v. Department of Environmental Resources,* 131 Pa.Cmwlth. 77, 569 A.2d 422 (1990).

**7.** On appeal from a decision of the Board, our scope of review is limited to a determination of whether the Board committed an error of law, violated constitutional rights, or whether substantial evidence supports its findings of fact. *Starr v. Department of Environmental Resources,* 147 Pa.Cmwlth. 196, 607 A.2d 321 (1992). A grant of summary judgment by the Board is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Empire Coal Mining and Development, Inc. v. Department of Environmental Resources,* 150 Pa.Cmwlth. 112, 615 A.2d 829 (1992), *petition for allowance of appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993).

**8.** In a footnote, the Coal Companies contend that Chairman Woelfling should not have participated in the determination of the fee petition when,

Board misconstrued the plain meaning of "incurred", and that "incurred" as used in Sections 4(b) and 5(g) encompasses both the direct and indirect incurrence of legal fees, so that the Coal Companies "incurred" fees in this case.[9]

When reviewing agency interpretations of statutes they are charged to enforce, our Supreme Court, in *Pennsylvania Human Relations Commission v. Uniontown Area School District*, 455 Pa. 52, 313 A.2d 156 (1973) (as well as the United States Supreme Court in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), has adopted a "strong deference" standard for reviewing agency interpretations of statutes they are charged to enforce. *Pennsylvania Elec. Co. v. Pennsylvania Public Utility Com'n*, 166 Pa.Cmwlth. 413, 648 A.2d 63 (1994), *petition for allowance of appeal denied*, 542 Pa. 680, 668 A.2d 1141 (1995). Under the "strong deference" standard, if we determine that the intent of the legislature is clear, that is the end of the matter and we, as well as the agency, must give effect to the unambiguously expressed intent of the legislature. If, however, we determine that the precise question at issue has not been addressed by the legislature, we are not to impose our own construction on the statute as would be necessary in the absence of an administrative interpretation, but review the agency's construction of the statute to determine whether that construction is permissible. *Pennsylvania Electric Company v. Pennsylvania Public Utility Company*. We must give deference to the interpretation of the legislative intent of a statute made by an administrative agency only where the language of that statute is not explicit or ambiguous. 1 Pa.C.S. § 1921(c)(8). A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations. *Drummond v. University of Pennsylvania*, 651 A.2d 572 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995).

The Coal Companies and the Department both contend that Sections 4(b) of SMCRA and 5(g) of BMSLCA are clear and unambiguous and that their intent can be derived from its plain meaning, but disagree as to exactly what that "plain meaning" is. The Coal Companies contend that under the plain meaning of Sections 4(b) and 5(g), they "incurred" the fees and costs of the CMAP litigation because they instituted and prosecuted the litigation, and, had the PCA not funded such, the Coal Companies themselves would have been responsible for its costs. The Coal Companies contend "incur" encompasses both direct and indirect liability for

---

due to a conflict of interest, she did not participate in the underlying permit appeals. Though the Coal Companies had no way of knowing of Woelfling's participation prior to the issuance of the Board's February 6, 1995 order, that order did not become final until September 11, 1995. During that intervening time, the Coal Companies could have addressed Woelfling's purported need to continue to recuse through a motion for reconsideration but did not do so. A motion for recusal must be raised at the earliest possible moment in the proceedings or suffer the consequences of being barred. *Ware v. U.S. Fidelity and Guaranty Co.*, 395 Pa.Super. 501, 577 A.2d 902 (1990). Because they did not raise whether Woelfling had to continue to recuse until this appeal, the Coal Companies' objection to Woelfling's participation was untimely.

9. The Coal Companies also contend that the Board frustrated the liberal interpretation mandated by Section 19 of BMSLCA, 52 P.S. § 1406.19, by so strictly and narrowly construing Sections 4(b) of the SMCRA and the identical fee-shifting provision found in 5(g) of the BMSLCA. Section 19 of BMSLCA provides:

This act is intended as remedial legislation designed to cure existing evils and abuses and each and every provision hereof is intended to receive a liberal construction such as will best effectuate that purpose, and no provision is to receive a strict or limited construction.

This provision does not alter the normally applicable rules of statutory construction, but only reiterates the intent of 1 Pa.C.S. § 1928(c) that all statutes are to be liberally construed to effect their objects and promote justice. And, ignoring that Section 19 was enacted 20 years prior to Section 5(g), *see Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Scioli–Turco Post 593, V.F.W.*, 668 A.2d 1207 (Pa. Cmwlth.1995), and that a similar provision is not in the SMCRA, the statement of purpose provision of both Acts (52 P.S. § 1406.2 and 52 P.S. § 1396.1) requires the Department to interpret all provisions in favor of protecting the environment. It has nothing to do with how we address administrative agency interpretations of both of these statutes.

attorney's fees and costs and, while the PCA bore the expense of the litigation as part of its representation of the interests of the Coal Companies and the coal mining industry in general, the dues paid by the Coal Companies to the PCA constituted at least part of the funding of the litigation.

The Department and the Board conversely interpret the word "incur" as limited to direct incurrence of those costs. The Department cites to the dictionary interpretation of the word and contends that under the plain meaning of Sections 4(b) and 5(g), the Board properly held that the Coal Companies were not eligible for recovery of attorney's fees and costs because the PCA and not the Coal Companies directly "incurred" those costs, and that the PCA was not a party to the litigation.

Both interpretations are reasonable; in fact, the Coal Companies' interpretation of "incur" was adopted in some federal cases involving the Equal Access to Justice Act. *See SEC v. Comserv Corp.*, 908 F.2d 1407 (8th Cir.1990); *United States v. Paisley*, 957 F.2d 1161 (4th Cir.1992), *petition for certiorari denied*, 506 U.S. 822, 113 S.Ct. 73, 121 L.Ed.2d 38 (1992). Where both readings of the statute are reasonable, under *Uniontown*, we are obligated to give great deference to the administrative agency's interpretation. Because the Board's interpretation of Sections 4(b) and 5(g) advanced by the Board, and since that interpretation is reasonable, accept that the plain meaning of "incur" is limited to a direct incurrence of attorney's costs and fees by an applicant.

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 12th day of April, 1996, the order of the Environmental Hearing Board, No. 87–131–MR et al., dated September 11, 1995, as to its dismissal of the Coal Companies' appeals in the February 6, 1995 order, is affirmed.