**MOONLITE CAFÉ, INC. d/b/a Moonlite Café, Petitioner**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided May 17, 2011.

Publication Ordered Aug. 2, 2011.

Charles L. Caputo, Pittsburgh, for petitioner.

Keith B. Fickel, Senior Counsel, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Moonlite Café, Inc. d/b/a Moonlite Café (Petitioner) petitions for review of a final determination of the Department of Health (Department), issued May 13, 2010, which upheld the decision of the Department's Bureau of Health Promotion and Risk Reduction (Bureau). The Bureau denied Petitioner's application for an exception under the Clean Indoor Air Act (CIAA), Act of June 13, 2008, P.L. 182, 35 P.S. §§ 637.1–.11. For the reasons that follow, we affirm.

Petitioner operates a bar and restaurant known as Moonlite Café located at 530 Brookline Boulevard, Pittsburgh, Pennsylvania 15226, and is the holder of Pennsylvania Restaurant Liquor License Number R–8179. Moonlite Café has a bar area, where smoking is permitted, and an eating area, where smoking is prohibited. Moonlite Café's bar area and eating area have separate outdoor entrances, separate kitchen entrances, and separate ventilation systems. Moonlite Café's bar area and eating area, however, are connected by a large hallway where Moonlite Café's restrooms are located. This hallway does not contain doors or other partitions physically separating Moonlite Café's bar area from Moonlite Café's eating area.

On September 8, 2008, Petitioner filed an application with the Department pursuant to Section 3(c) of the CIAA,[1] seeking

---

1. 35 P.S. § 637.3(c). Section 3(c) of the CIAA provides, in pertinent part:

   (c) Conditions and qualifications for exceptions.—

an exception from Section 3(a) of the CIAA's [2] general prohibition against "smoking in a public place" for Moonlite Café's bar area. Petitioner claimed that Moonlite Café's bar area is entitled to an exception under Section 3(b)(10) of the CIAA [3] as a "drinking establishment." [4] Following a review of Petitioner's application and an on-site visual inspection of Moonlite Café, the Bureau denied Petitioner's request for an exception on March 16, 2009. The Bureau determined that Petitioner was not entitled to an exception under Section 3(b)(10) of the CIAA as a Type II Drinking Establishment because Moonlite Café's bar area is not an "enclosed area ... which, on [September 11, 2008] is a physically connected or directly adjacent enclosed area which is separate from the eating area." (Reproduced Record (R.R.) at 30 (quotations omitted) (alterations in original).) On March 25, 2009, Petitioner filed a request for reconsideration, which the Bureau denied on May 14, 2009, on the grounds that Moonlite Café's bar area "is not enclosed and separate from the eating area." (R.R. at 47.)

On May 22, 2009, Petitioner appealed the Bureau's denial to the Secretary of the Department. By final determination issued May 13, 2010, the Department's Deputy Secretary for Administration (Deputy Secretary), acting as the Department's agency head, upheld the Bureau's decision. In so holding, the Deputy Secretary interpreted the term "enclosed area," as used in subsection (2) of Section 2 of the CIAA's definition of "drinking establishment," to mean "an area surrounded on all sides,"

(1) In order to be excepted under subsection (b), a drinking establishment, cigar bar or tobacco shop must submit a letter, accompanied by verifiable supporting documentation, to the department claiming an exception under subsection (b).

2. 35 P.S. § 637.3(a). Section 3(a) of the CIAA provides, in pertinent part:

(a) General rule.—Except as set forth under subsection (b), an individual may not engage in smoking in a public place.

3. 35 P.S. § 637.3(b)(10). Section 3(b)(10) of the CIAA provides:

(b) Exceptions.—Subsection (a) shall not apply to any of the following:
....
(10) A drinking establishment.

4. 35 P.S. § 637.2. Section 2 of the CIAA defines "drinking establishment" as any of the following:

(1) An establishment which:
(i) operates pursuant to an eating place retail dispenser's license, restaurant liquor license or retail dispenser's license under the act of April 12, 1951 (P.L. 90, No. 21), known as the Liquor Code;
(ii) has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales of the establishment; and
(ii) does not permit individuals under 18 years of age.
(2) An *enclosed area* within an establishment which, on the effective date of this section:
(i) operates pursuant to an eating place retail dispenser's license, restaurant liquor license or retail dispenser's license under the Liquor Code;
(ii) is a physically connected or directly adjacent *enclosed area* which is separate from the eating area, has a separate air system and has a separate outside entrance;
(iii) has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales within the permitted smoking area of the establishment; and
(iv) does not permit individuals under 18 years of age.
(Emphasis added). As demonstrated above, Section 2 of the CIAA provides two definitions for the term "drinking establishment." An establishment falling under subsection (1) is referred to as a Type I Drinking Establishment and an establishment falling under subsection (2) is referred to as a Type II Drinking Establishment. Petitioner sought an exception under Section 3(b)(10) of the CIAA as a Type II Drinking Establishment.

and found that Moonlite Café's bar area is not an "enclosed area" because "there was no wall between the restaurant and the bar and these areas were connected with each other by a large walkway where the bathrooms were located." (R.R. at 73, 75.) This petition for review followed.

On appeal,[5] Petitioner argues that the Department erred in denying Petitioner's application for an exception under Section 3(b)(10) of the CIAA as a Type II Drinking Establishment on the grounds that Moonlite Café's bar area is not an "enclosed area." Specifically, Petitioner contends that subsection (2)(ii) of Section 2 of the CIAA's definition of "drinking establishment" is ambiguous, and that the Department's interpretation of "enclosed area" is illogical, erroneous, and inconsistent with the CIAA. Petitioner maintains that Moonlite Café's bar area qualifies as an "enclosed area" because "it is wholly enclosed on three sides and there is a long passageway that leads to the non-smoking area of the establishment." (Petitioner's Brief at 15.) We disagree.

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, which provides that "the object of all interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to stat-

utory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 577 Pa. at 123, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

The term "enclosed area" is not defined under the CIAA. Where a term is not expressly defined in a statute, this Court will construe the term according to its common and approved usage. 1 Pa.C.S. § 1903(a). To do so, we may look to dictionary definitions. *Educ. Mgmt. Servs., Inc. v. Dep't of Educ.*, 931 A.2d 820, 825 (Pa.Cmwlth.2007). Black's Law Dictionary defines "enclose," in pertinent part, as: "To surround or encompass; to fence or hem in on all sides." BLACK'S LAW DICTIONARY at 568 (8th ed.2004). The American Heritage College Dictionary further defines "enclose," in pertinent part, as: "To surround on all sides; close in." AMERICAN HERITAGE COLLEGE DICTIONARY at 461 (4th ed.2004). The Department's interpretation of the term "enclosed area" is consistent with these definitions.

Furthermore, under the maxim *noscitur a sociis*, "the meaning of words may be indicated or controlled by those words with which they are associated." *Com. ex rel.*

---

5. This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

*Fisher v. Philip Morris, Inc.,* 4 A.3d 749, 756 n. 9 (Pa.Cmwlth.2010). In addition to the "enclosed area" requirement, subsection (2) of Section 2 of the CIAA's definition of "drinking establishment" mandates, *inter alia,* that a Type II Drinking Establishment (1) be *"separate* from the eating area," (2) have "a *separate* air system," and (3) have "a *separate* outdoor entrance." (Emphasis added.) The key term in each of these requirements is the adjective "separate." The American Heritage College Dictionary defines "separate," in pertinent part, as: "1. Set or kept apart; disunited. 2a. Existing as an independent entity.... 3. Dissimilar from all others; distinct. 4. Not shared; individual." AMERICAN HERITAGE COLLEGE DICTIONARY at 1264 (4th ed.2004). The Shorter Oxford English Dictionary additionally defines "separate," in pertinent part, as: "2a. Solitary, secluded.... b. Detached, set apart, (*from* something); not incorporated or joined. 3a. Existing or regarded as a unit by itself. b. Belonging or exclusive to an individual person or thing, not shared." SHORTER OXFORD ENGLISH DICTIONARY at 2757 (5th ed.2002) (emphasis in original).

▆▆▆ Keeping in mind that Section 3(b)(10) of the CIAA is an exception to Section 3(a) of the CIAA's general prohibition against "smoking in a public place," it is axiomatic that an establishment applying for a Type II Drinking Establishment exception is entitled to an exception only for that portion of the establishment constituting a Type II Drinking Establishment. Smoking remains prohibited, therefore, in those areas of the establishment not constituting a Type II Drinking Establishment. In requiring that a Type II Drinking Establishment be an "enclosed area which is separate from the eating area, has a separate air system and has a

separate outside entrance," it is clear that the General Assembly intended to isolate those areas of an establishment constituting a Type II Drinking Establishment so as to prevent as much as possible the flow of secondhand smoke into those areas of the establishment not constituting a Type II Drinking Establishment. Applying *noscitur a sociis,* therefore, "enclosed area" cannot be interpreted to encompass a configuration where an open hallway allows secondhand smoke to travel unimpeded from a bar area to an eating area. Accordingly, we find no error in the way that the Department interpreted and applied the term "enclosed area."

Even if we assume, *arguendo,* that the term "enclosed area" is ambiguous, as Petitioner suggests, the result does not change. "When the words of [a] statute are not explicit, the intention of the General Assembly may be ascertained by considering," *inter alia,* "[l]egislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c)(8). An administrative agency's interpretation of a statute that the agency is charged to enforce is entitled to "strong deference" unless it is clearly erroneous. *Borough of Ellwood City v. Pa. Labor Relations Bd.,* 606 Pa. 356, 998 A.2d 589, 594 (2010); *Bethenergy Mines,* 676 A.2d at 715–16.

▆▆▆ Noting that an establishment must operate pursuant to a liquor license under the Liquor Code in order to qualify as a Type II Drinking Establishment, Petitioner argues that the Department's interpretation of "enclosed area" is erroneous because an establishment cannot qualify for a Type II Drinking Establishment exception without jeopardizing its ability to use its liquor license in both its bar area and its eating area under Section 406.1 of the Liquor Code.[6] Specifically, Petitioner

---

6. Act of April 12, 1951, P.L. 90, *as amended,*   added by Section 3 of the Act of December

maintains that a bar area and an eating area cannot be "contiguous," as required by Section 406.1 of the Liquor Code, if the bar area is required to be surrounded on all sides. We disagree.

The term "contiguous" is not defined under the Liquor Code. Black's Law Dictionary defines "contiguous," in pertinent part, as: "Touching at a point or along a boundary." BLACK'S LAW DICTIONARY at 338 (8th ed.2004). The Department's interpretation of "enclosed area," therefore, does not prevent Moonlite Café's bar area from being "contiguous" to Moonlite Café's eating area under Section 406.1 of the Liquor Code. Furthermore, application of Section 406.1 of the Liquor Code is not limited to areas that are "contiguous," but also includes areas that are "abutting" and "adjacent." Black's Law Dictionary defines "abut" as: "To join at a border or boundary; to share a common boundary with." *Id.* at 11. Black's Law Dictionary defines "adjacent" as: "Lying near or close to, but not necessarily touching." *Id.* at 44. Accordingly, even if the Department's interpretation of "enclosed area" prevents Moonlite Café's bar area from being "contiguous" to its eating area, the

Department's interpretation does not prevent Moonlite Café's bar area from "abutting" or being "adjacent" to its eating area, and, therefore, the Department's interpretation is consistent with Section 406.1 of the Liquor Code. Finally, that the Department's interpretation of "enclosed area" is consistent with Section 406.1 of the Liquor Code is further reinforced by the language contained in Section 406.1 of the Liquor Code that "[t]here shall be no requirement that the secondary service area be physically connected to the original licensed premises."

Because the Department's interpretation of "enclosed area" is reasonable, even if we were to hold that Petitioner's interpretation of "enclosed area" was also reasonable—which we do not—this Court would be obligated to defer to the Department's interpretation. *Bethenergy Mines,* 676 A.2d at 716. The Department, therefore, did not err in denying Petitioner's application for a Type II Drinking Establishment exception on the grounds that Moonlite Café's bar area is not an "enclosed area." [7]

Accordingly, we affirm.

---

17, 1982, P.L. 1390, 47 P.S. § 4–406.1. Section 406.1 of the Liquor Code provides, in pertinent part:

> (a) Upon application of any restaurant, hotel, club, municipal golf course liquor licensee or manufacturer of malt or brewed beverages, and payment of the appropriate fee, the board may approve a secondary service area by extending the licensed premises to include one additional permanent structure with dimensions of at least one hundred seventy-five square feet, enclosed on three sides and having adequate seating. Such secondary service area must be located on property having a minimum area of one (1) acre, and *must be on land which is immediate, abutting, adjacent or contiguous to the licensed premises* with no intervening public thoroughfare; however, the original licensed premises and the secondary service area must be located on the same tract of

land.... There shall be no requirement that the secondary service area be physically connected to the original licensed premises. (Emphasis added.)

7. Petitioner argues, in the alternative, that it should have the opportunity to perform renovations to bring Moonlite Café into compliance for a Type II Drinking Establishment exception. Subsection (2) of Section 2 of the CIAA's definition of "drinking establishment," however, clearly specifies that an establishment must qualify for a Type II Drinking Establishment exception "on the effective date of this section," which was September 11, 2008. Because the CIAA is now effective, existing establishments cannot be renovated and new establishments cannot be constructed to meet the criteria for a Type II Drinking Establishment. Accordingly, this Court cannot grant Petitioner's requested relief.

## ORDER

AND NOW, this 17th day of May, 2011, the final determination of the Department of Health (Department), issued May 13, 2010, is hereby AFFIRMED.