IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanya J. McCloskey, Acting : 
Consumer Advocate, : 
                   Petitioner : 
                   : 
        v. : 
                   : 
Pennsylvania Public Utility Commission, :    No. 1183 C.D. 2018
             Respondent :    Argued: June 6, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED:  July 11, 2019


       The Office of Consumer Advocate (OCA) petitions this Court for review of the Pennsylvania Public Utility Commission's (PUC) April 26, 2018 order (April 2018 Order) holding that Act 40 of 2016 (Act 40)[1] does not apply to Distribution System Improvement Charge (DSIC) calculations.  There are two issues before this Court: (1) whether the OCA's appeal was timely; and (2) whether the PUC correctly held that Act 40 is ambiguous and, based upon its interpretation thereof, Newtown Artesian Water Company (NAWC) was not required to include accumulated deferred income taxes (ADIT) and state income taxes in its DSIC calculation.[2]

---

[1]  Act 40 was added to the Public Utility Code by Section 1 of the Act of June 12, 2016, P.L. 332, and consists only of Section 1301.1 of the Code, 66 Pa.C.S. § 1301.1.

[2] This matter was argued seriately with *McCloskey v. Pa. Pub. Util. Comm'n* (Pa. Cmwlth. No. 697 C.D. 2018, filed July 11, 2019).

## Background

In order to address [concerns over aging infrastructure], the [PUC] encouraged utilities to plan and implement accelerated replacement of their aging infrastructure. At the same time, however, it was understood by utilities making infrastructure investment that they would be unable to adjust the rates they charged to their customers between traditional ratemaking cases to recover those specific infrastructure investment costs in a timely manner.

Therefore, on February 14, 2012, Act 11 [of 2012, (Act 11), which amended Chapters 3, 13 and 33 of the Public Utility Code (Code), 66 Pa.C.S. § 101-3316] was signed into law. Among other things, Act 11 repealed the prior statute that permitted *only* water utilities to charge a DSIC (66 Pa.C.S. § 1307(g)), and authorized natural gas distribution, electric distribution, *as well as* water and wastewater utilities to charge a DSIC. Now, these utilities have access to an alternative ratemaking mechanism whereby the utilities may recover costs related to repair, improvement and replacement of eligible projects outside of a ratemaking case. *See* 66 Pa.C.S. §§ 1350-1360.

Section 1353(a) of the Code, 66 Pa.C.S. § 1353(a) states in pertinent part []:

> [A] utility may petition the [PUC], or the [PUC] after notice and hearing, may approve the establishment of a [DSIC] to provide for the timely recovery of the reasonable and prudent costs incurred to repair, improve or replace eligible property in order to ensure and maintain adequate, efficient, safe, reliable and reasonable service.

66 Pa.C.S. § 1353(a).

Section 1352 of the Code, 66 Pa.C.S. § 1352, states that, as a prerequisite to the implementation of a DSIC, a utility must file a long-term infrastructure improvement plan (LTIIP).

*McCloskey v. Pa. Pub. Util. Comm'n (McCloskey I)*, 127 A.3d 860, 863 (Pa. Cmwlth. 2015) (footnotes omitted).

In *McCloskey I*, this Court considered whether the PUC erred when it concluded that a utility was not required to include an ADIT adjustment in its DSIC calculation and permitted the utility to include the state income tax gross-up in its DSIC calculation. In affirming the PUC's order, this Court relied upon Section 1301 of the Code, which provides, in relevant part, that "[e]very rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the [PUC]." 66 Pa.C.S. § 1301. This Court held that "there is no single way to arrive at just and reasonable rates and that the [PUC] is 'vested with discretion to decide what factors it will consider in setting or evaluating a utility's rates.'" *McCloskey I*, 127 A.3d at 868 (quoting *Popowsky v. Pa. Pub. Util. Comm'n (Pa. Cable Television Ass'n)*, 669 A.2d 1029, 1040 (Pa. Cmwlth. 1995), *rev'd on other grounds*, 706 A.2d 1197 (Pa. 1997)). "The bottom line is that the appropriate inquiry is whether the total effect of the surcharge results in unjust and unreasonable rates." *Id*. at 869.

Thereafter, on June 12, 2016, Act 40 was signed into law and became effective on August 11, 2016. Act 40 added Section 1301.1 to the Code, which requires:

> **(a) Computation. -**- If an expense or investment is allowed to be included in a public utility's rates for ratemaking purposes, the related income tax deductions and credits shall also be included in the computation of current or deferred income tax expense to reduce rates. If an expense or investment is not allowed to be included in a public utility's rates, the related income tax deductions and credits, including tax losses of the public utility's parent or affiliated companies, shall not be included in the computation of income tax expense to reduce rates. The deferred income taxes used to determine the rate base of a public utility for ratemaking purposes shall be based solely

3

on the tax deductions and credits received by the public utility and shall not include any deductions or credits generated by the expenses or investments of a public utility's parent or any affiliated entity. The income tax expense shall be computed using the applicable statutory income tax rates.

**(b) Revenue use.** -- If a differential accrues to a public utility resulting from applying the ratemaking methods employed by the [PUC] prior to the effective date of subsection (a) for ratemaking purposes, the differential shall be used as follows:

(1) Fifty percent to support reliability or infrastructure related to the rate base eligible capital investment as determined by the [PUC]; and

(2) Fifty percent for general corporate purposes.

**(c) Application. -**- The following shall apply:

(1) Subsection (b) shall no longer apply after December 31, 2025.

(2) This section shall apply to all cases where the final order is entered after the effective date of this section.

66 Pa.C.S. § 1301.1.

On September 1, 2017, NAWC filed a supplement to its DSIC tariff seeking to increase NAWC's existing cap from 5% to 7.5%. On September 29, 2017, the OCA filed a formal complaint with the PUC opposing the proposed cap increase (Complaint).[3] The OCA also asserted that given the enactment of Act 40, NAWC must comply with Section 1301.1 of the Code by including related federal and state income tax credits and deductions in its DSIC rate calculation. On October 5, 2017, the PUC instituted an investigation into the lawfulness, justness, and reasonableness of NAWC's existing and proposed rates, rules, and regulations. The PUC ordered that NAWC's supplement be suspended by operation of law until May 1, 2018,

---

[3] The Complaint was docketed at C-2017-2626954.

unless it directed otherwise. The matter was assigned to the Office of Administrative Law Judge (ALJ). On February 9, 2018, the ALJ issued a recommended decision (Recommended Decision) denying NAWC's request to increase its rate cap, and directing NAWC to modify its DSIC to account for all federal and state income tax deductions and credits in its DSIC calculation.

On March 1, 2018, NAWC filed exceptions to the Recommended Decision and OCA filed reply exceptions. By the April 2018 Order, the PUC reversed the ALJ's Recommended Decision, concluding that Section 1301.1(a) of the Code applies to base rate filings but not to DSIC rates. The PUC explained:

> [W]e disagree with the ALJ's conclusion that Section 1301.1 [of the Code] requires [NAWC's] DSIC to include federal and state income tax deductions and credits generated by DSIC investment. We find that the language in Section 1301.1 [of the Code] is ambiguous regarding whether Act 40 applies to the DSIC. Statutory language is considered ambiguous when a pertinent provision is susceptible to more than one reasonable interpretation or when the language is vague, uncertain, or indefinite. Section 1301.1 [of the Code] is susceptible to more than one reasonable interpretation. The OCA argues that the language in the first sentence of Section 1301.1(a) [of the Code] clearly provides that Act 40 applies to the DSIC because Act 40 applies to rates as broadly defined in Section 102 of the Code, [66 Pa.C.S. § 102,] and the DSIC is a rate that recovers utility investment and income tax expense related to that investment.
>
> However, the OCA's position does not account for the language in the third sentence of Section 1301.1(a) [of the Code], which provides as follows:
>
>> The deferred income taxes used to determine the rate base of a public utility for ratemaking purposes shall be based solely on the tax deductions and credits received by the public utility and shall not include any deductions or credits generated by the expenses or

investments of a public utility's parent or any affiliated entity.

> 66 Pa.C.S. § 1301.1(a). This provision explains how the deductions and credits in the first sentence of Section 1301.1(a) [of the Code] should be calculated. It refers back to the first two sentences of Section 1301.1(a) [of the Code] and specifically uses the term 'rate base' and not the general term 'rate.' The term 'rate base' is a technical term that is used in general base rate cases. The use of both the terms 'rate' and 'rate base' creates an ambiguity in the meaning of Section 1301.1 [of the Code] and supports [NAWC's] position that the language in Section 1301.1 [of the Code] is ambiguous and, therefore, should be analyzed under Section 1921(c) [of the Statutory Construction Act of 1972 (SCA),[4]] 1 Pa.C.S. § 1921(c), to ascertain the intention of the General Assembly.

April 2018 Order at 37-39 (citations and footnotes omitted).[5]

---

[4] Section 1921(c) of the SCA provides:

> When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
>> (1) The occasion and necessity for the statute.
>>
>> (2) The circumstances under which it was enacted.
>>
>> (3) The mischief to be remedied.
>>
>> (4) The object to be attained.
>>
>> (5) The former law, if any, including other statutes upon the same or similar subjects.
>>
>> (6) The consequences of a particular interpretation.
>>
>> (7) The contemporaneous legislative history.
>>
>> (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

[5] The PUC adopted the April 2018 Order on April 19, 2018. On that same date, the PUC adopted and entered the order at issue in *McCloskey v. Pennsylvania Public Utility Commission* (Pa. Cmwlth. No. 697 C.D. 2018, filed July 11, 2019), argued *seriately* with the instant matter. Notably, in that case, Commissioner David Sweet (Commissioner Sweet) issued a dissenting statement, explaining, in relevant part:

6

The PUC remanded the matter to the ALJ for a determination of whether NAWC exceeded its rate cap and would continue to do so, thereby justifying the rate cap increase. The OCA did not appeal from the April 2018 Order at that time. On June 15, 2018, the ALJ issued a recommended decision on remand (Recommended Decision on Remand) concluding that NAWC exceeded its 5% DSIC rate cap and would continue to do so, but denying the rate cap increase. NAWC filed exceptions to the Recommended Decision on Remand and OCA filed reply exceptions, but did not further argue the applicability of Section 1301.1(a) of the Code to DSIC rates therein. By July 27, 2018 Opinion and Order (July 27, 2018 Order), the PUC formally adopted the Recommended Decision on Remand and denied NAWC's rate cap increase request. On August 27, 2018, the OCA appealed to this Court seeking review of the April 2018 Order with respect to Act 40's applicability to DSIC rates. [6]

---

> I agree with the ALJ that the language of the statute is clear in its use of the word 'rate,' and is free from ambiguity.
>
> Chapter 13 of the . . . Code addresses ratemaking generally, and the definition of the term 'rates' is broad, and includes but is not limited to base rates. Further, rate base is *not* the same as base rates. The reference, therefore, to 'rate base' within Section 1301.1 does not render that section ambiguous with regard to its applicability to a DSIC rate calculation, nor does it support the conclusion that the section is limited to base rate calculations only. If it was the intent of the General Assembly to limit this section to base rate calculations in base rate proceedings, they [sic] could have so specified.

Pub. Util. Comm'n, No. P-2015-2508942, Dissenting Statement, Commissioner Sweet (Apr. 19, 2018) (footnotes omitted). Commissioner Sweet did not issue a dissenting statement in the instant case.

[6] This Court has explained:

> On a petition to review a decision of [the] PUC, our standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether [the] PUC erred as a matter of law, and whether constitutional rights were violated. [*Coal. for Affordable Util. Servs. & Energy Efficiency in Pa. v. Pa. Pub. Util. Comm'n,*] 120 A.3d [1087,] 1094 [(Pa. Cmwlth. 2015)]. We defer to [the] PUC's interpretation of the . . . Code and its own regulations

7

## Discussion

The PUC argues that the OCA's appeal must be dismissed as untimely. Because that issue is dispositive, we will address it first. The PUC contends that the PUC's April 2018 Order included, among other things, a determination as to Act 40's applicability to the DSIC rate calculation. The PUC contends that, although the April 2018 Order remanded the issue of whether NAWC had exceeded its DSIC rate cap, Act 40's applicability to NAWC's DSIC rate calculation was not addressed on remand because it had already been ruled upon in the April 2018 Order. The PUC further emphasizes that the OCA did not request reconsideration of the April 2018 Order, nor did it timely petition this Court for review within 30 days thereof, and it did not file its current appeal until 31 days[7] after the PUC issued its July 27, 2018 Order.

> This Court has explained:
>
> A final order is any order that disposes of all claims or of all parties . . . . [Pennsylvania Rule of Appellate Procedure (Rule)] 341(b)(1) . . . . Pa.R.A.P. 341(b)(1)[]. Appeals are permitted only from final orders so as to prevent piecemeal determinations and the consequent protraction of litigation.

---

> unless [the] PUC's interpretations are clearly erroneous. *Id.* at 1095. We may not substitute our judgment for that of [the] PUC 'when substantial evidence supports the PUC's decision on a matter within the [PUC's] expertise.' *Id.* (internal quotation marks and citation omitted). 'Judicial deference is even more necessary when the statutory scheme is technically complex.' *Id.* (internal quotation marks and citation omitted). On issues of law, 'our standard of review is *de novo* and our scope of review is plenary.' *Id.*

*Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018) (footnote omitted).

[7] The OCA explains that since August 26, 2018, the 30th day following July 27, 2018, was a Sunday, the OCA filed its petition for review the following day. Section 1908 of the SCA, 1 Pa.C.S. § 1908, relating to the computation of time, omits the last day of a time period which falls on a Saturday, Sunday or a legal holiday.

8

> The general rule that a final order is required before an appeal may be taken is fundamental to the exercise of jurisdiction by the appellate court and is rigorously applied.

*Green Mountain Energy Co. v. Pa. Pub. Util. Comm'n*, 812 A.2d 740, 743 (Pa. Cmwlth. 2002) (citations omitted).  Rule 341 provides, in relevant part:

> **(b) Definition of Final Order.** – A final order is any order that:
>
> (1)  disposes of all claims and of all parties; or
>
> . . . .
>
> (3)  is entered as a final order pursuant to paragraph (c) of this rule.
>
> **(c)  Determination of finality. –** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case.  Such an order becomes appealable when entered.  **In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order**.

Pa.R.A.P. 341 (bold text emphasis added).  Thus, "[a]n order is final if it disposes of all claims and all parties, and an order is interlocutory when it does not effectively put a litigant out of court."  *Koken v. Colonial Assurance Co.*, 885 A.2d 1078, 1101 (Pa. Cmwlth. 2005) (citation omitted), *aff'd*, 893 A.2d 98 (Pa. 2006).

Because the April 2018 Order did not "dispose[] of all claims and all parties[,]" it was not a final order.  Pa.R.A.P. 341(b)(1).  Accordingly, the OCA was not required to file its appeal within 30 days of when the April 2018 Order was issued.  Rather, the OCA timely appealed from the July 27, 2018 Order which disposed of all remaining issues.  The Court, therefore, rejects the PUC's argument.

9

The OCA argues that the PUC erred when it concluded that Act 40 is ambiguous and that the legislative intent was to limit its application to base rates. The OCA contends that Act 40 is unambiguous and that the relevant statutory definitions mandate Act 40's application to DSIC calculations. It further claims that Act 40's enactment supersedes this Court's *McCloskey I* decision. The OCA maintains that, since it is undisputed that the DSIC is a statutorily defined rate, Section 1301.1(a) of the Code applies to DSIC calculations and, accordingly, the PUC and this Court **must** accept the statutory definition and apply it to Section 1301.1(a) of the Code.

> Specifically, the OCA argues:
>
> [T]he statute contains no language limiting its application to a specific type of 'rate.' [66 Pa.C.S. § 1301.1(a).] Section 1301.1 [of the Code] does not mention 'DSIC' or 'base rates.' The statute does mention 'rate base' in the third sentence of 1301.1(a) [of the Code]. Rate base and base rates, however, are not the same. Rate base is another technical word that is defined by the [Code] as follows: [']The value of the whole or any part of the property of a public utility which is used and useful in the public service.['] 66 Pa.C.S. § 102.
>
> The DSIC rate, like base rates, is calculated to recover the value (depreciation and pretax return) of a utility's capital investment (property) which is used and useful in the public service. 66 Pa.C.S. § 1357(a)(1), (3). Specifically, the DSIC rate recovers the value of utility property that has 'been placed in service' in the prior quarter and has 'not previously been reflected in the utility's rates or rate base.' 66 Pa.C.S. § 1357(a)(1). Thus, **rate base is not particular to base rates and its usage in Section 1301.1(a) [of the Code] creates no limitation on the application of the statute**.

OCA Br. at 23 (emphasis added).

The PUC rejoins:

The initial inconsistency arises with use of the term 'rates' contained in the first sentence of subsection (a) with the use of the [term] 'rate base' in the third sentence of subsection (a).

The third sentence of the subsection specifically uses the term 'rate base' and not the general term 'rate.' The term 'rate base' is also a technical term defined by Section 102 of the Code and is primarily used in general base rate cases under Section 1308 of the Code[, 66 Pa.C.S. § 1308]. Ambiguity arises, however, when attempting to reconcile the third sentence of subsection (a) with the first two sentences of the subsection. The third sentence refers back to the first two sentences and explains to what rates the computation of the related income tax deductions and credits in the first two sentences of subsection (a) should apply.

PUC Br. at 21-22 (footnote omitted).

Initially,

[w]hen reviewing agency interpretations of statutes they are charged to enforce, our Supreme Court, in *Pennsylvania Human Relations Commission v. Uniontown Area School District*, . . . 313 A.2d 156 ([Pa.] 1973) (as well as the United States Supreme Court in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837. . . (1984)), has adopted a 'strong deference' standard for reviewing agency interpretations of statutes they are charged to enforce. Under the 'strong deference' standard, **if we determine that the intent of the legislature is clear, that is the end of the matter and we, as well as the agency, must give effect to the unambiguously expressed intent of the legislature**. If, however, we determine that the precise question at issue has not been addressed by the legislature, we are not to impose our own construction on the statute as would be necessary in the absence of an administrative interpretation, but review the agency's construction of the statute to determine whether that construction is permissible. **We must give deference to the interpretation of the legislative intent of a statute made by an administrative agency only where the language of**

11

> **that statute is not explicit or ambiguous**. **A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations**.

*Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth. 1996) (citations omitted; emphasis added). Thus, resorting to legislative intent through statutory construction principles to determine whether Section 1301.1(a) of the Code applies to DSIC calculations is only necessary if the term "rates," as used in Section 1301.1(a) of the Code, is ambiguous.

> The Pennsylvania Supreme Court explained:

> Whether a statute is ambiguous cannot be determined in a vacuum.

> > A statute is ambiguous when there are at least two reasonable interpretations of the text. In construing and giving effect to the text, 'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.' *Roethlein v. Portnoff Law Assoc*[*s*]*.*, . . . 81 A.3d 816, 822 (Pa. 2013) (citing *Mishoe v. Erie Ins. Co.*, . . . 824 A.2d 1153, 1155 (Pa. 2003)); *accord Commonwealth v. Office of Open Records*, . . . 103 A.3d 1276, 1285 (Pa. 2014) (party's argument that statutory language is ambiguous 'depends upon improperly viewing it in isolation;' when language is properly read together and in conjunction with rest of statute, legislative intent is plain). The United States Supreme Court also takes a contextual approach in assessing statutes and in determining predicate ambiguity. *See generally King v. Burwell*, __ U.S. __, 135 S.Ct. 2480, 2489, 192 L. Ed. 2d 483 ([]. 2015) ('If the statutory language is plain, we must enforce it according to its terms. But oftentimes the meaning - or ambiguity - of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a

view to their place in the overall statutory scheme.' ([I]nternal quotation marks and citations omitted)); *Yates v. U*[.]*S*[.], __U.S.__, 135 S.Ct. 1074, 1081-82, 191 L. Ed. 2d 64 ([] 2015) ('Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.' Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.' ([I]nternal citations omitted)).

*A.S. v. Pa. State Police*, . . . 143 A.3d 896, 905-906 ([Pa.] 2016) (some citations omitted, others modified).

*In re Tr. Under Deed of Kulig*, 175 A.3d 222, 231-32 (Pa. 2017).

Section 102 of the Code defines "rate" as:

**Every** individual, or joint fare, toll, **charge**, rental, **or other compensation whatsoever of any public utility**, or contract carrier by motor vehicle, made, demanded, or **received for any service** within this part, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and **whether received directly or indirectly**, **and any** rules, regulations, **practices**, classifications or contracts **affecting any such compensation, charge**, fare, toll, or rental.

66 Pa.C.S. § 102 (emphasis added).

The Pennsylvania Supreme Court has held that "**if the General Assembly defines words that are used in a statute, those definitions are binding**." *Pa. Associated Builders & Contractors, Inc. v. Dep't of Gen. Servs.*, 932 A.2d 1271, 1278 (Pa. 2007) (emphasis added); *see also Lower Swatara Twp. v. Pa. Labor*

*Relations Bd.*, __ A.3d __ (Pa. Cmwlth. No. 1276 C.D. 2018, filed May 2, 2019). "**When the** [**General Assembly**] **defines the words it uses in a statute**, neither the jury **nor the court may define them otherwise**." *Commonwealth v. Massini*, 188 A.2d 816, 817 (Pa. Super. 1963) (emphasis added). "**When** [**the General Assembly**] **does define the words used in a statute**, **the courts** need not refer to the technical meaning and deviation of those words as given in dictionaries, but **must accept the statutory definitions**." *Id.* (emphasis added); *see also Commonwealth v. Lobiondo*, 462 A.2d 662 (Pa. 1983). Thus, according to the OCA, the term, "rate," used in Section 1301.1(a) of the Code is the broadly-inclusive term defined in Section 102 of the Code, and it is not limited to "base rate."[8]

This Court notes that Section 1353 of the Code authorizes the PUC to grant or approve the establishment of a DSIC and sets forth the process to petition the PUC for DSIC approval. *See* 66 Pa.C.S. § 1353. Section 1357 of the Code details the method for calculating a DSIC, *see* 66 Pa.C.S. § 1357, and Section 1358 of the Code, entitled "[c]ustomer protections[,]" *inter alia*, imposes a permissible DSIC cap. 66 Pa.C.S. § 1358. Significantly, Sections 1353, 1357 and 1358 of the Code refer to the DSIC as a "charge" rather than a "rate." 66 Pa.C.S. §§ 1353, 1357, 1358. Regardless, as a charge, the DSIC falls within Section 102 of the Code's definition of "rate." 66 Pa.C.S. § 102.

"A statute is ambiguous when there are at least two **reasonable** interpretations of the text under review." *Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014) (emphasis added). Nonetheless, **an interpretation that disregards and/or contradicts an explicitly stated, statutorily defined meaning cannot be reasonable**. By claiming and

---

[8] Notably, the Code does not define the term "base rate," and Section 1308(d) of the Code provides a detailed process for base rate proceedings using the defined term "rate" therein. 66 Pa.C.S. § 1308(d).

concluding that the term "rates" as used in Section 1301.1(a) of the Code is ambiguous and does not include DSIC, the PUC and NAWC simply disregard the binding statutory definition under the guise of pursuing statutory intent. Sections 1353(b)(4),(5), 1357(b),(c), and 1358(b)(1) of the Code specifically include the term "base rate." *See* 66 Pa.C.S. §§ 1353(b)(4),(5), 1357(b),(c), 1358(b)(1). It is clear from the General Assembly's use of the term "base rate" in those Code sections that the General Assembly knew how to differentiate between "base rates" and "rates" and did so in drafting the legislation. In Section 1301.1(a) of the Code, it used the defined term, "rate[s]." 66 Pa.C.S. § 102. That term in the first two sentences of Section 1301.1(a) of the Code is not ambiguous because it is defined to include "[e]**very** . . . **charge** . . . **whatsoever of any public utility**[.]" 66 Pa.C.S. § 102 (emphasis added). In order for this Court to conclude that Section 1301.1(a) of the Code is ambiguous, it would have to assign a meaning to the word "rates" different from the General Assembly's explicit definition, which this Court may not do.[9] *See Pa. Associated Builders*; *Lobiondo*; *Lower Swatara*; *Massini.*

> As the ALJ clearly explained in his Recommended Decision:
>
> The plain language of Section 1301.1 [of the Code] requires that the impact of any tax deductions and credits related to an expense or investment that is allowed to be included in a public utility's rates for ratemaking purposes *shall* be included in the computation of current or deferred income tax expense to reduce rates. Use of the word 'shall' in statutes is generally accepted as imperative or mandatory and must be given a compulsory meaning as denoting obligation. I agree with [the] OCA that Act 40 now requires the inclusion of federal and state income tax deductions in the DSIC rate charged to customers.

---

[9] Nor may this Court insert or read into Section 1301.1(a) of the Code the word "base" before the word "rates." "This Court has consistently held that courts may not supply words omitted by the legislature as a means of interpreting a statute. This Court's duty to interpret statutes does not include the right to add words or provisions that the legislature has left out." *Rogele, Inc. v. Workers' Comp. Appeal Bd.(Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009) (citations omitted).

Although [NAWC] argued that Act 40 addresses consolidated income tax expense for base rate purposes, that this is not a base rate proceeding, that the DSIC rate is a surcharge mechanism for the recovery of the costs related to the repair, improvement, and replacement of eligible property outside of a rate case, and that surcharges are not part of a base rate proceeding, the language of the aforementioned code provisions are clear:

> If an expense or investment is allowed to be included in a public utility's rates for ratemaking purposes, the related income tax deductions and credits shall also be included in the computation of current or deferred income tax expense to reduce rates.

66 Pa.C.S. § 1301.1(a). As previously noted, the term 'rate' is defined to include charges, such as the DSIC. Although this may not be a base rate proceeding, the language is clear, and Section 1301.1 [of the Code] applies.

[NAWC] also argues that the legislative history behind Act 40 demonstrates that the purpose of [Act 40] was to eliminate the consolidated tax adjustment. However, there is nothing in the plain language of the statute to suggest this. On the contrary, Subsection (a) of Section 1301.1 [of the Code] says if an expense or investment is allowed to be included in a utility's rates for ratemaking purposes then the related income tax deductions and credits must also be included. Subsection (a) then articulates the opposite: if the expense or investment is not allowed to be included in a utility's rates for ratemaking purposes, any related income tax deductions and credits cannot be included. The third and fourth sentences in subsection (a) then articulate how those deductions and credits should be calculated. **This language is clear and unambiguous.**

**The rules of statutory construction require that 'when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' [1 Pa.C.S. § 1921(b).] In this case, the language of Section 1301.1 [of the Code] is clear and free from all ambiguity and therefore the letter of the statute cannot be disregarded.**

> **NAWC's reliance on legislative history as a reason to adopt its position in this proceeding is incorrect. Where the plain language of the statute is discernible, as is the case here, there is no need to look to the legislative history.** As the rules of statutory construction further require, 'when the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: . . . . (7) the contemporaneous legislative history.' [1 Pa.C.S. § 1921(c)(7).] **In this case, however, the words of Section 1301.1 [of the Code] are explicit and, therefore, there is no need to look to the contemporaneous legislative history to ascertain the intention of the General Assembly.**

Recommended Decision at 59-60 (emphasis added; footnotes omitted). This Court discerns no error in the ALJ's analysis.

For all of the above reasons, the PUC's April 2018 Order is reversed, and this matter is remanded to the PUC to require NAWC to revise its tariffs and DSIC calculation pursuant to Section 1301.1(a) of the Code.

_____
ANNE E. COVEY, Judge

17

Tanya J. McCloskey, Acting        :
Consumer Advocate,             :
              Petitioner    :
                          :
        v.             :
                          :
Pennsylvania Public Utility Commission, :     No. 1183 C.D. 2018
           Respondent    :

# O R D E R

AND NOW, this 11th day of July, 2019, the Pennsylvania Public Utility Commission's (PUC) April 26, 2018 order is reversed, and the matter is remanded to the PUC for the purpose of requiring Newtown Artesian Water Company to revise its tariffs and Distribution System Improvement Charge calculation in accordance with Section 1301.1 of the Public Utility Code, 66 Pa.C.S. § 1301.1.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge