**EDUCATIONAL MANAGEMENT SERVICES, INC., Petitioner**

v.

**DEPARTMENT OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 6, 2007.

Decided Aug. 24, 2007.

---

Michael McAuliffe Miller, Harrisburg, for petitioner.

Robert M. Tomaine, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Education Management Services, Inc. (EMS) petitions for review of an order of the Hearing Officer, which held that the Department of Education, Division of Food and Nutrition, Bureau of Fiscal Management (Department) properly disallowed EMS additional reimbursement in the 2005–2006 budget year for certain facilities and space costs, including mortgage interest, real estate taxes, repairs, and real estate insurance, listed as personal expenses on the Schedule E tax form of the owners of EMS.

The Food and Nutrition Service Division of the United States Department of Agriculture funds the Child and Adult Care Food Program (CACFP) through the Department. (Hearing Officer Findings of Fact (FOF) ¶¶ 9, 13.) Sponsoring organizations administer the CACFP by reimbursing nonresidential institutions that provide child care for the cost of food service programs. (FOF ¶ 10.) EMS, a non-profit organization, is a sponsoring organization of the CACFP, and the Department reimburses such sponsors in accordance with the federal and state regulatory scheme and guidelines promulgated in the Food and Nutrition Service Instruction 796–2, Revision no. 3(FNS). (FOF ¶¶ 7, 12.) EMS must submit a yearly budget that conforms to the FNS

and must receive Department approval to obtain reimbursement for the administrative costs of sponsoring the CACFP. (FOF ¶¶ 18–19.)

EMS is owned by Dr. J. Craig Raisner and Jean E. Raisner, husband and wife (Raisners). EMS is located at 4331 North Front Street, Harrisburg, Pennsylvania (Property), which is also owned by the Raisners. (FOF ¶¶ 1–2.) The Raisners lease the Property to two tenants: EMS, which occupies 60% of the building, and a second tenant, which rents office space on the second floor. (Department Hearing Officer Transcript (Tr.) at 58; Schedule E tax form; Reproduced Record (R.R.) at 76a, 290a.) The FNS considers the lease between EMS and the Raisners to be a less-than-arms-length transaction. (FOF ¶¶ 6, 8.) Neither the Raisners, nor anyone else, has lived at the Property at any time relevant to EMS' appeal, "the [P]roperty is zoned 'commercial,' and has a commercial/office 'use code.' " (FOF ¶¶ 3–4.)

The FNS establishes program standards, principles, and guidelines for financial management, in part, to assure that costs claimed for reimbursement are "allowable, i.e., necessary and reasonable for effective and efficient operation of the nonprofit food service . . . ." (FNS, Section I(A) Purpose, R.R. at 146a.) The FNS also generally advises that "[s]pecial consideration is needed whenever a transaction lacks independence, for example transactions between related parties, because the integrity of the transaction could be compromised . . . ." (FNS, Section VIII(C) Standards for Allowable Costs, R.R. at 161a.) In the Section on "Standards for Allowable Costs" there is a subsection containing thirty-nine (39) "Selected Items of Cost," which are costs that "frequently occur in organizations operating the CACFP." (FNS, Section VIII(I) Standards for Allowable Costs, R.R. at

164a.) The dispute in this case involves the interpretation of two of these selected items: Paragraph 17, entitled "Facilities and Space Costs" and Paragraph 36, entitled "Rental Costs." The Raisners argue that the Property should be considered under the provisions for a "private residence," while the Department argues that it should be considered under the provisions for "commercial space."

Paragraph 17 of the FNS provides, in pertinent part, as follows:

> *Facilities and Space Costs.* Space and facilities costs, including rearrangement and alteration costs (see a(3) below), may be charged through rental/lease fees (see 36, below) or depreciation (see 13, above), as appropriate.
>
> a. Allowable Costs. Whether in privately or publicly owned buildings, the total cost for space and facilities cannot exceed the rental costs of comparable space and facilities for privately owned buildings in the same locality.
>
> (1) **All related party rental transactions for commercial space and facilities are subject to cost limitations.** (See 36 d(3), below.)
>
> (2) When a **private residence owned by the institution or a related party is used for program purposes, the costs claimed must meet all IRS requirements for business use of a home** and must be supported by the records used to meet the IRS requirements for documenting the business use of the home.

(FNS, Section VIII(I) 17, R.R. at 179a–180a.) (emphasis added)

Paragraph 36 of the FNS provides, in pertinent part, as follows:

> *Rental Costs.* Costs in this category include lease costs for space, facilities, vehicles and equipment for use in the program. The costs resulting from less-

than-arms-length transactions and lease arrangements that result in ownership interests, however represented, are limited. (See d, below.) Rental fees must be prorated between program and non-program use to obtain the portion that benefits the program. (See c(2), below.)

a Allowable Costs

(1) Space and Facilities

(a) Private and public buildings and facilities. The institution's cost for the program share of rental costs of space in a building owned by a private third party when properly procured and a bona fide arms-length written rental agreement exists between the institution and the lessor;

(b) Publicly owned facilities ...;

(c) The program share of maintenance and custodial costs when included in rental charges; and

(d) **Private residence.** The program share of space costs in a private residence to the extent that the rental rate is reasonable and a bona fide arms-length rental exists **(see 17(a)(2), above for space costs of private residences in a less-than-arms-length transaction).**

\* \* \*

d Special Lease Arrangements. The following four types of lease arrangements require special consideration and specific prior written approval. . . .

\* \* \*

(3) **Less-than-arms-length transactions. Costs under less-than-arms-length arrangements, no matter how represented, may not exceed the amount that would have been allowed had the item been owned by the institution.** All transactions between related parties are less-than-arms-length.

(a) **Allowable lease costs are limited to:**

i Space and Facilities. **The amount that results from applying 30 year life expectancy to the property's acquisition cost less the value of land;**

(FNS, Section VIII(I) 36, R.R. at 213a–218a.) (emphasis added)

EMS claims the Raisners' Property qualifies as a private residence and that FNS Paragraph 36(a)(1)(d) applies. Using the Raisner's theory, the allowable costs for a private residence with a less-than-arms-length transaction would be calculated under Paragraph 17(a)(2) of the FNS.

In contrast, the Department insists that the Raisners' Property should be considered commercial space and that Paragraph 36(d)(3)(a) applies. Using the Department's theory, the allowable costs for commercial space in less-than-arms-length agreements would be calculated under Paragraph 17(a)(1) of the FNS.

EMS submitted its 2005–2006 budget on September 7, 2005, seeking a $9,809.00 reimbursement under the FNS heading of "Facilities and Space Costs" pursuant to Paragraphs 17(a)(2) and 36(a)(1)(d) for personal expenses claimed on its schedule E tax form, including facility, janitorial, and insurance costs. (FOF ¶¶ 23, 25, 33, 35–36.) The Department disapproved EMS' calculation of Facilities and Space costs and, consequently, its 2005–2006 budget. (FOF ¶ 26.) Rather, the Department recalculated EMS' Facilities and Space costs pursuant to FNS Paragraphs 17(a)(1) and 36(d)(3)(a) and notified EMS of the FNS requirements. (FOF ¶ 28.) While preserving its right to appeal the Department's decision, EMS submitted a revised budget that adopted the Department's recalculation on November 2, 2005. (FOF ¶ 30; Electronic Mail from Dr. J. Craig Raisner to Susan Still, Supervisor of the

Department (October 31, 2005) at 1, R.R. at 297a.) The Department approved the revised budget and reimbursed EMS $1,692.00 for Office Rental/Lease under Facilities and Space costs pursuant to FNS Paragraphs 17(a)(1) and 36(d)(3)(a). (FOF ¶ 28.)

EMS appealed the Department's decision and requested, in addition to the amounts received in its rental/lease cost allowance, amortization, depreciation, property taxes, facility repairs, accounting, mortgage interest, real estate insurance, and miscellaneous.[1] A Hearing Officer conducted a hearing on August 22, 2006. EMS presented the testimony of one expert witness, Karl Wilcox, Certified Public Accountant. Wilcox testified that, because no other category of Section 36(a)(1) applies to EMS' less-than-arms-length rental of a private building, EMS must qualify as a private residence under Section 36(a)(1)(d).[2] (Hearing Officer Op. at 13.) The reimbursable space costs of private residences under Section 36(a)(1)(d) are calculated under Section 17(a)(2). Applying the calculations in Section 17(a)(2), Wilcox concludes that the FNS entitles EMS to reimbursement for personal expenses listed on the Raisners' Schedule E tax form. (Hearing Officer Op. at .13.) Additionally, Wilcox opines that the Raisners incurred their Schedule E tax form personal expenses for the benefit of the CACFP and the Commonwealth and that, therefore, the FNS entitles EMS to a $9,808.00 reimbursement. (Hearing Offi-

cer Op. at 13.) Lastly, Wilcox testified that "private residence" is a particular cost allocation category under the FNS and does not require that someone live on the property. (Hearing Officer Op. at 13.)

Additionally, at the hearing, EMS presented the testimony of Anne Kurtz, Administrator of First Steps to Nutrition (First Steps), a sponsor of CACFP, to compare the Departments' treatment of First Steps with the Department's treatment of EMS. (FOF ¶¶ 37, 40.) Kurtz testified that she lives at a property in Wellsboro, Pennsylvania, and rents space in her home to First Steps. (FOF ¶ 38.) The FNS defines such agreements as less-than-arms-length. (FOF ¶ 39.) However, unlike the Raisners' Property, the Department considers Kurtz's property a private residence for CACFP reimbursement purposes. (FOF ¶ 41.)

 The Hearing Officer determined that the Property was commercial office space, not a private residence, and that, therefore, Paragraph 36(d)(3)(a), for less-than-arms-length *commercial space* rental agreements, rather than section 36(a)(1)(d), for less-than-arms-length *private residence* rental agreements, applies. (Hearing Officer Conclusions of Law (COL) ¶¶ 1–2.) The Hearing Officer stated that to qualify as a "private residence" in common usage, the Raisners must live at the Property. (Hearing Officer Op. at 15.) The Hearing Officer emphasized that

---

1. EMS sought the following facility costs: (1) amortization in the amount of $292; (2) depreciation in the amount of $3403; (3) property taxes in the amount of $1610; (4) facility repairs in the amount of $428; (5) accounting in the amount of $270; (6) mortgage interest in the amount of $2668; (7) real estate insurance in the amount of $900; and (8) miscellaneous costs in the amount of $238, which totaled $9809. (EMS Br. at 5; Department Br. at 3.)

2. Wilcox eliminates the two other categories of Section 36(a)(1) by the following logic: Section 36(a)(1)(a) contemplates private buildings, but under arms-length agreements; Section 36(a)(1)(b) contemplates less-than-arms-length agreements, but of publicly owned facilities. Thus, since the only category remaining is Section 36(a)(1)(d), Wilcox opines that EMS must qualify as a private residence under Section 36(a)(1)(d).

the Property was zoned for commercial use and, based on the plain definition of "residence," rejected Wilcox's testimony. (Hearing Officer Op. at 14.) Accordingly, the Hearing Officer upheld the Department's decision and found that EMS received the correct reimbursement for the 2005–2006 fiscal year. (COL ¶ 4.) Furthermore, the Hearing Officer distinguished EMS and First Steps by noting that Kurtz lives in the building she rents to First Steps. (Hearing Officer Op. at 16 n. 9.) This appeal followed.[3]

On appeal, EMS argues that the Hearing Officer erred in: (1) failing to credit EMS' unrebutted expert testimony from Karl Wilcox that Paragraphs 17(a)(2) and 36(a)(1)(d) entitle EMS to reimbursement; (2) incorrectly distinguishing between First Steps and EMS by not allowing EMS to recover under Paragraphs 17(a)(2) and 36(a)(1)(d); and (3) issuing a decision not supported by substantial evidence.

■ EMS first argues that the Hearing Officer erred by not crediting Wilcox's testimony because the Department never rebutted Wilcox's expert opinion that EMS qualifies as a private residence and that Paragraphs 36(a)(1)(d) and 17(a)(2) apply.

EMS insists that the Property's commercial zoning classification allows residential use and that Paragraphs 36(a)(1)(d) and 17(a)(2) apply to property that *could be* used as a private residence based on Wilcox's testimony that "private residence" is a Section 36(a)(1) term for a cost allocation category rather than a meaningful limitation.[4] EMS asserts that the Hearing Officer erred by not treating EMS as a private residence and that the Hearing Officer created a category and definition not specified in the FNS. EMS reasons that Paragraph 36(a)(1)(d) is the only Paragraph 36(a) category that could apply to EMS and that, therefore, the Hearing Officer should have applied Paragraphs 36(a)(1)(d) and 17(a)(2) and allowed reimbursement for personal expenses claimed on the Raisners' Schedule E tax form.

■ When a statute fails to define a term, the term's ordinary usage applies.[5] *Mosaica Education, Inc. v. Pennsylvania Prevailing Wage Appeals Board,* 925 A.2d 176, 184, n. 13 (Pa.Cmwlth.2007). Dictionaries provide substantial evidence of a term's ordinary usage. *SPC Co., Inc. v. Zoning Board of Adjustment of the City of*

3. On appeal from a Commonwealth agency, this Court's scope of review is limited to determining whether the Hearing Officer committed an error of law or violated constitutional rights, and whether the Hearing Officer issued a decision supported by substantial evidence. *Reading School District v. Department of Education,* 875 A.2d 1218, 1220, n. 3 (Pa. Cmwlth.2005). Substantial evidence is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion. *William Penn School District v. Department of Education,* 902 A.2d 583, 586 n. 3 (Pa. Cmwlth.2006).

4. EMS notes that Paragraph 17(a)(2) applies when a sponsoring institution owns the private residence and reasons that an institution cannot "live" at a location and, thus, a property capable of use as a private residence,

qualifies as such for purposes of Paragraph 17(a)(2). Paragraph 17(a)(2) only applies to private residences for less-than-arms-length transactions. An institution may own the private residence, but the related party, in the less-than-arms-length transaction, must live at the property to make that property a private residence under Paragraph 17(a)(2). The mere fact that an institution or, as here, a less-than-arms-length related party owns a property capable of residential use does not convert the property into a private residence.

5. Section 1903(a) of the Statutory Construction Act of 1972 provides, in relevant part, that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903.

*Philadelphia,* 773 A.2d 209, 213 (Pa. Cmwlth.2001).

Paragraph 17(a)(1) applies· to commercial space and limits reimbursement for less-than-arms-length transactions through Paragraph 36(d)(3)(a), which the Hearing Officer and the Department correctly applied to limit EMS' Space and Facilities reimbursement to $1,692.00. The FNS lacks definitions for "private residence" and "commercial space" and, thus, the Hearing Officer correctly referred to the terms' common usage. *Black's Law Dictionary* defines the term "residence" as a "[p]lace where one actually lives [or a] house or other fixed abode." *Black's Law Dictionary* 1335 (Eighth Ed.2004). Moreover, *Black's Law Dictionary* defines "commercial property" as "[i]ncome producing property."[6] *Black's Law Dictionary* 271 (Sixth Ed.1990). The common usage of "private residence" and the FNS scheme, in its entirety, rebut Wilcox's testimony that "private residence" is merely an umbrella term for a cost allocation category under the FNS.[7] Even if the zoning classification allows both commercial and residential uses, the Raisners use the Property commercially and not residentially. Thus, the Property constitutes commercial space, not a private residence, and Paragraphs 17(a)(1) and 36(d)(3)(a) apply. Accordingly, because Paragraph 36(a)(1)(d) does not apply, the Hearing Officer correctly held that the Raisners' Schedule E personal expenses may not be reimbursed. Therefore, we decline EMS' invitations to define "private residence" as a building capable of residential use although currently used commercially.

Next, EMS argues that the Hearing Officer incorrectly distinguished between First Steps and EMS. EMS reasons that, because both properties could be used as a private residence, the actual use is irrelevant. EMS further reasons that both First Steps and EMS fit within the same definition of "private residence" and under the same section of the FNS.

The Hearing Officer correctly distinguished between First Steps and EMS. While Kurtz lives at the property she rents to First Steps, the Raisners have never lived at the Property EMS rents. Thus, the terms' common usage dictates that Paragraph 36(a)(1)(d) applies for First Steps, which Kurtz currently uses as a private residence, while Paragraph 36(d)(3)(a) applies for EMS, which the Raisners currently use as commercial space.

Finally, EMS argues that, because the Hearing Officer relied on a definition and category unsupported by evidence and never rebutted Wilcox's testimony, the decision is not supported by substantial evidence.

Substantial evidence supports the Hearing Officer's decision to deny EMS additional Space and Facilities reimbursement for the 2005–2006 budget year. The Hearing Officer rebutted Wilcox's testimony with the common usage of "private residence" and "commercial space." (Hearing Officer Op. at 14.) The Raisners never lived at the Property. (Tr. at 25.) The Raisners also rent the Property to an additional and unrelated party. (Tr. at 58.) Therefore, the Property is not a private

**6.** The Hearing Officer relied on an earlier version of *Black's Law Dictionary* to define 'commercial property' because the most recent version does not appear to define the term.

**7.** EMS assumes that the Property is a private residence so it can exclusively apply Paragraph 36(a)(1) to prove, by process of elimination, that the Property really is a private residence. We reject EMS' circular reasoning and refrain from reading Paragraph 36(d)(3)(a) out of the FNS.

residence defined by common usage, but commercial space. The Hearing Officer properly applied Paragraph 17(a)(2) for commercial space, rather than forcing EMS into an inapplicable Paragraph 36(a)(1) category. Kurtz testified that she lives at the property she rents to First Steps and, thus, the Hearing Officer correctly distinguished First Steps from EMS. (Tr. at 66.) The Hearing Officer relied on evidence supported by the record such that a reasonable mind might consider sufficient to support the decision. *See William Penn School District*, 902 A.2d at 586 n. 3.

Accordingly, we affirm the Hearing Officer's decision.

## ORDER

**NOW,** August 24, 2007, the order of the Hearing Officer in the above-captioned matter is hereby **AFFIRMED.**