**HOUSE OF LEUNG, INC. d/b/a House of Lee, Petitioner**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 14, 2011.

Decided Dec. 21, 2011.

Publication Ordered March 5, 2012.

Charles L. Caputo, Pittsburgh, for petitioner.

Keith B. Fickel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

House of Leung, Inc., d/b/a House of Lee (Leung), petitions for review of an order of the Department of Health (Department) upholding an order of the Bureau of Health Promotion and Risk Reduction (Bureau). The Bureau's order denied Leung's Application for Exception for Cigar Bar, Drinking Establishment, or Tobacco Shop on the grounds that Leung's establishment did not qualify for an exception to permit smoking pursuant to the Clean Indoor Air Act (Act),[1] on the basis that Leung's establishment did not have a separate entrance to the smoking area distinct from the entrance to the non-smoking portion of the establishment. We affirm.

Leung operates a bar and restaurant known as the House of Lee located at 8145 Ohio River Boulevard, Pittsburgh, Pennsylvania. On September 12, 2008, Leung filed with the Department an Application for Exception for Cigar Bar, Drinking Establishment, or Tobacco Shop (the Application) seeking an exception to the Act's ban on indoor smoking as a Type II Drinking Establishment.[2] After receiving the Application and conducting a visual inspection of Leung's establishment, the Bureau denied the Application by letter dated March 17, 2009, on the grounds that Leung did

---

1. Act of June 13, 2008, P.L. 182, 35 P.S. §§ 637.1–637.11.

2. On its relevant Application for Exception, the Department identifies two types of drinking establishment exceptions to the Act's requirements, with a Type II Drinking Establishment exception requiring that the establishment, *inter alia,* have a valid restaurant liquor license, and a smoking area separate from the eating area with a separate outside entrance thereto. *See* Reproduced Record (R.R.) at 6.

not meet one or more of the Act's requirements.

Leung thereafter timely sought reconsideration of the Bureau's denial. Following its review, the Department denied the reconsideration request and upheld the Bureau's decision on the basis that Leung's establishment did not have a separate outside entrance for its smoking area. Leung timely appealed to the Department. Discerning no existing issue of fact in the matter before it, the Department held no evidentiary hearings, and received no additional evidence.

The Department made Findings of Fact and drew Conclusions of Law, and by Final Agency Determination and Order dated October 25, 2010, upheld the Bureau's decision on the basis that the Act's language mandating a separate outside entrance for a drinking establishment exception was free and clear from ambiguity, and that the establishment's entrance configuration did not meet the Act's requirements. The Department noted that the establishment had one single door to the outside located beyond the boundary or outer side or surface of where both the bar and eating areas of the establishment were located. Within that single door was a single vestibule with two entrances therein; one to the non-smoking eating area, and one to the smoking bar area. The Department concluded that the single door leading from the outdoors to the vestibule, and the vestibule's two interior separate area entrances, did not comport with the Act's "separate outside entrance" requirement. Leung now petitions for review of the Department's October 25, 2010 order.[3]

Leung presents one issue for review: whether the Department erred in denying Leung's Application for a Type II Exception on the basis that the establishment's smoking area does not have a separate outside entrance as required by Section 2 of the Act, 35 P.S. § 637.2(2).

Most generally stated, the Act prohibits smoking in public places. Section 3(a) of the Act provides, in pertinent part:

> (a) General rule.—Except as set forth under subsection (b), an individual may not engage in smoking in a public place.

35 P.S. § 637.3(a). Addressing exceptions relevant to the issue *sub judice*, Section 3(b)(10) of the Act provides:

> (b) Exceptions.—Subsection (a) shall not apply to any of the following:
>
> *       *       *
>
> (10) A drinking establishment.

35 P.S. § 637.3(b)(10). Section 2 of the Act defines "drinking establishment" as any of the following:

> (1) An establishment which:
>
> (i) operates pursuant to an eating place retail dispenser's license, restaurant liquor license or retail dispenser's license under the act of April 12, 1951 (P.L. 90, No. 21), known as the Liquor Code;
>
> (ii) has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales of the establishment; and
>
> (iii) does not permit individuals under 18 years of age.
>
> (2) An enclosed area within an establishment which, on the effective date of this section:
>
> (i) operates pursuant to an eating place retail dispenser's license, restau-

---

**3.** This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Moonlite Cafe, Inc. v. Department of Health,* 23 A.3d 1111 (Pa.Cmwlth.2011).

rant liquor license or retail dispenser's license under the Liquor Code;

(ii) is a physically connected or directly adjacent enclosed area which is separate from the eating area, has a separate air system and has a separate outside entrance;

(iii) has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales within the permitted smoking area of the establishment; and

(iv) does not permit individuals under 18 years of age.

35 P.S. § 637.2.

In *Moonlite Cafe,* this Court noted:

Section 2 of the [Act] provides two definitions for the term "drinking establishment." An establishment falling under subsection (1) is referred to as a Type I Drinking Establishment and an establishment falling under subsection (2) is referred to as a Type II Drinking Establishment.

\* \* \*

Keeping in mind that Section 3(b)(10) of the [Act] is an exception to Section 3(a) of the [Act's] general prohibition against "smoking in a public place," it is axiomatic that an establishment applying for a Type II Drinking Establishment exception is entitled to an exception only for that portion of the establishment constituting a Type II Drinking Establishment. Smoking remains prohibited, therefore, in those areas of the establishment not constituting a Type II Drinking Establishment. In requiring that a Type II Drinking Establishment be an "enclosed area which is separate from the eating area, has a separate air system and has a separate outside entrance," it is clear that the General Assembly intended to isolate those areas of an establishment constituting a Type II Drinking Establishment so as to prevent as much as possible the flow of secondhand smoke into those areas of the establishment not constituting a Type II Drinking Establishment.

*Moonlite Cafe,* 23 A.3d at 1112–13, 1115.

■ Leung concedes that the only issue herein is whether the Department erred in concluding that Leung's drinking establishment did not have a "separate outside entrance" under Section 2 of the Act. Leung argues that although the Department based its conclusion on the fact that the establishment's entrance was a single door located on the outside of its building which patrons enter and exit, regardless of whether they are frequenting the smoking or non-smoking areas, that configuration does in fact constitute separate entrances. The door on the outside leads into a non-smoking, glass vestibule area with separate doorways/entrances to access the smoking area (the bar), and the nonsmoking area (the restaurant). Leung argues that Section 2's "separate outside entrance" should be read to also includes doorways that lead to the outside of an *establishment,* but not necessarily outside the *exterior* of a building or structure.

In the alternative, Leung argues that the Act is ambiguous, and provides no guidance on the meaning of the phrase "separate outside entrance." As such, Leung asserts that no deference is due to the Department's interpretation of Section 2 of the Act, citing to *Bethenergy Mines Inc. v. Department of Environmental Protection,* 676 A.2d 711 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 668, 685 A.2d 547 (1996) (As a general rule, deference is due to an agency's interpretation of a statute that it is charged with enforcing; however, where statutory language is ambiguous, this Court need

not afford such deference to an agency interpretation).

We reject, as the Department did, Leung's proffered interpretation of the phrase "separate outside entrance" as including the entrances to the vestibule at issue, but exclusive of any entrance that actually opens to the literal outside of the establishment. Further, we agree with the Department that the plain language of the operative statutory phrase is clear on its face, and free from ambiguity.

Neither the phrase "separate outside entrance" within Section 2 of the Act, nor the individual words therein, are defined within the Definitions section of the Act. 35 P.S. § 637.2. However, it is axiomatic that the lack of an express statutory definition does not automatically render a statute unclear or ambiguous. *See Sklar v. Department of Health,* 798 A.2d 268, 276 (Pa.Cmwlth.2002), *petitions for allowance of appeal denied,* 577 Pa. 699, 845 A.2d 819 (2004). "When a statute fails to define a term, the term's ordinary usage applies ... Dictionaries provide substantial evidence of a term's ordinary usage." *Educational Management Services v. Department of Education,* 931 A.2d 820, 825 (Pa. Cmwlth.2007) (citations omitted). Section 1903(a) of the Statutory Construction Act of 1972 provides, in relevant part, that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage ..." 1 Pa.C.S. § 1903(a).

The Department utilized dictionary definitions of the words "separate," "outside" and "entrance" from *Webster's Third New International Dictionary* 2068, 1604, 758 (3d ed.1993) to assist in arriving at a definition for "separate outside entrance." R.R. 70. The October 25, 2010 order reiterated the definitions as follows:

"separate" is defined to mean "to set or keep apart" ... Webster's dictionary defines "outside" as "a place or region that is situated beyond an enclosure, boundary, or other limit ... an outer side or surface" ... and "entrance" as "the means or place for physical entering."

*Id.* Combining these definitions, the Department concluded that the General Assembly intended that the term "separate outside entrance" must require that the entrance be one that is used to access the premises directly from outside of the premises. We agree that this interpretation can be read as constituting the plain meaning of the phrase as derived from these definitions, and is the plain meaning of the term that should be applied in interpreting the Act. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903.

Leung's proffered interpretation gives no effect to the General Assembly's use, or the plain dictionary definition, of the word "outside." Leung's interpretation ignores not only the presumption that "the General Assembly intends the entire statute to be effective and certain," but also the primary requirement of statutory construction that "every statute shall be construed, if possible, to give effect to all its provisions." Sections 1922(2) and 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1922(2), 1921(a). The Department's interpretation combines the clear definitions for each of the words to ensure that each word is given effect, and that the entire term, "separate outside entrance," is certain. The plain meaning of the word "outside" is clear; it must mean out of the entire premises. To hold otherwise, and/or to allow an outside entrance to also include first entering into an interior common area of the same premises and then into the smoking area, would be to nullify the word "outside" in its entirety and to treat it as mere surplus, and the term would merely read "separate entrance."

Thus, the Department did not err in denying Leung's Application on the basis of its statutory interpretation of the relevant statutory terms within the Act.

Leung also argues that the Department's interpretation of the statutory phrase at issue would create an absurd result. Leung emphasizes that Section 406.1(a) of the Liquor Code requires that all areas operating pursuant to a liquor license must be contiguous. Act of April 12, 1951, P.L. 90, added by the Act of Dec. 17, 1982, P.L. 1390, *as amended,* 47 P.S. § 4–406.1(a).[4] Leung correctly notes that in *Moonlite Cafe,* we defined an "enclosed area" under the Act as an area surrounded by four walls. *Moonlite Cafe,* 23 A.3d at 1112–15. Leung argues that to comply with the requirements of both the Liquor Code and the Act, a business could attach a vestibule such as the one at issue. Leung argues that it would be an absurd result—and thus contrary to statutory interpretation—if, to satisfy both the Department's "enclosed area" regulation and the "separate outside entrance," an establishment would be required to hold two liquor licenses. We disagree.

Leung's assertion that the instant phrase at issue and the terms of the Liquor Code are in conflict is simply incorrect. First, we note that Section 406.1(a) of the Liquor Code is inapplicable to the present case. Secondly, contrary to Leung's suggestion, as the Department notes, Liquor Code Section 406.1(a) deals solely with an application to extend a licensed service area to another secondary area, and the Department's interpretation of "separate outside entrance" does not conflict with this section of the Liquor Code on its face, or put a licensee in jeopardy of violating this section, assuming it has a licensed secondary service area. Leung's assertion that he could theoretically imagine a narrow factual situation that potentially could conflict with a statutory section that is not at issue herein is without merit to the validity of the issue before this Court.

■ Finally, Leung requests, in the alternative to a reversal by this Court of the Department's denial of the Application at issue, that it be provided with an opportunity to bring its premises into compliance for a Type II Exception. However, neither the Department nor this Court may ignore the Act's compliance deadline for Type II Drinking Establishment exception requirements. To qualify for an exception as a Type II Drinking Establishment under Section 2 of the Act, the designated area of an establishment must have satis-

---

4. Section 406–1(a) of the Liquor Code is entitled "Secondary service area" and reads:

Upon application of any restaurant, hotel, club, municipal golf course liquor licensee or manufacturer of malt or brewed beverages, and payment of the appropriate fee, the board may approve a secondary service area by extending the licensed premises to include one additional permanent structure with dimensions of at least one hundred seventy-five square feet, enclosed on three sides and having adequate seating. Such secondary service area must be located on property having a minimum area of one (1) acre, and must be on land which is immediate, abutting, adjacent or contiguous to the licensed premises with no intervening public thoroughfare; however, the original licensed premises and the secondary service area must be located on the same tract of land.... There shall be no requirement that the secondary service area be physically connected to the original licensed premises. In addition, there shall be no requirement that the secondary service area be located in the same municipality as the original licensed premises, provided, however, that the board shall not approve a secondary service area in this case if that secondary service area is located in any municipality where the granting of liquor license has been prohibited as provided in this article. 47 P.S. § 4–406.1(a).

fied the definition of a Type II Drinking Establishment by September 11, 2008, the effective date of the Act's Definition section. 35 P.S. § 637.2. As such, Leung's argument on this issue is also without merit.

Accordingly, we affirm.

## ORDER

AND NOW, this 21st day of December, 2011, the order of the Department of Health, dated October 25, 2010, at Dkt. No. CIAA APP 005–2009, is affirmed.