# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Emily J. Mueller, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Banking and | : | |
| Securities (Office of Open | : | |
| Records), | : | No. 666 C.D. 2025 |
| Respondent | : | Argued: April 13, 2026 |


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                              FILED:  May 7, 2026

Emily J. Mueller (Requester) petitions this Court for review of the Office of Open Records' (OOR) April 25, 2025 Final Determination (Final Determination) granting in part and denying in part Requester's appeal that challenged the Department of Banking and Securities' (Department) denial of certain records she requested as part of a Right-to-Know Law (RTKL)[1] request. Requester presents four issues for this Court's review: (1) whether the Department satisfied its burden of demonstrating that the records it withheld are confidential under Section 302 of the Department of Banking and Securities Code (Code);[2] (2) whether the Department's conclusory and boilerplate invocation of the attorney-client privilege and attorney work-product doctrine satisfied its burden of

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Act of May 15, 1933, P.L. 565, *as amended*, 71 P.S. § 733-302 (relating to forbidden information disclosure).

demonstrating that the attorney-client privilege and attorney work-product doctrines justified each withholding; (3) whether the Department's conclusory allegations about an unspecified noncriminal investigation satisfied its burden of showing that Section 708(b)(17) of the RTKL[3] justified its withholdings; and (4) whether the Department satisfied its burden of demonstrating that it conducted an adequate search. After review, this Court affirms.

In June 2024, the Department filed an Order to Show Cause (OSC), thereby commencing an administrative enforcement proceeding against a company named TitleMax. Therein, the Department alleged that TitleMax violated thousands of Pennsylvania's usury laws over a period of at least nine years by entering into high interest loan agreements with Pennsylvania borrowers. On November 27, 2024, Requester submitted to the Department, pursuant to the RTKL, a request seeking 58 items pertaining to the Department's OSC proceeding against TitleMax (Request), including, *inter alia*,[4] records related to the TitleMax/TMX Finance/Family of Companies. On January 17, 2025, after invoking a 30-day extension to respond, the Department denied the Request in part, stating that records responsive to Request Items (Items) 1, 5-7, and 10-13 relate to a noncriminal investigation, *see* 65 P.S. § 67.708(b)(17), and the disclosure thereof may violate confidentiality under the Code. *See* 71 P.S. § 733-302. The Department further denied the Request, withholding or redacting portions of the records responsive to Items 2-4, 8-9, 14-15, 20-22, 26, 29-34, 36-37, 47, and 55 on the basis that they contained medical records, personal identification information, internal, predecisional deliberations, and noncriminal investigatory records and, thus, were exempt from public access. *See* 65 P.S. §

---

[3] 65 P.S. § 67.708(b)(17) (exceptions for public records).

[4] The Request seeks a variety of records including, but not limited to, documents in investigative files, emails, text messages, memoranda, letters, audio messages, internal correspondence, consumer complaints, records (audio and video), the Department's retention and disposition schedule, and several Department policies. *See* Reproduced Record at 1a-10a.

67.708(b)(5), (6)(i)(A), (10)(i)(A), (17). The Department also declared that responsive records were protected by the attorney-client privilege and/or the attorney work-product doctrine. In addition, the Department described that disclosure of specific records may violate confidentiality under the Code, and that some Items were insufficiently specific. *See* Section 703 of the RTKL, 65 P.S. § 67.703. Finally, the Department granted the Request in part as to Items 2-4, 8-9, 14-15, 20-22, 26, 29-34, 36-37, 47, and 55, and provided records or weblinks to Items 23-25, 35, 39-42, 52-53, and 56-58.

On February 10, 2025, Requester appealed to the OOR, challenging the Department's denial and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the Department to notify any third parties of their opportunity to participate in this appeal. On February 13, 2025, the Department filed a Motion to Dismiss Deficient Appeal, arguing therein that the OOR should dismiss the appeal because Requester failed to provide a concise statement as required by Section 1101(a)(1) of the RTKL[5] and the OOR's policy statement governing appeals, and offered only a vague and general statement that the requested records are public and not subject to exemptions under any federal or state law or regulation. On February 19, 2025, Requester responded, countering therein, among other things, that the appeal was not deficient. That same day, the OOR determined that the appeal was not deficient and extended the submission period to March 7, 2025.

On March 7, 2025, the Department submitted a position statement, reiterating its grounds for denial. The Department asserted that it conducted a good

---

[5] 65 P.S. § 67.1101(a)(1) ("The appeal shall state the grounds upon which [] [R]equester asserts that the record is a public record, legislative record or financial record and shall address any grounds stated by the agency for delaying or denying the [R]equest.").

.

faith search for records responsive to the Request and that each record recovered during the search was individually reviewed by an attorney in the Department's Office of Chief Counsel (Office of Chief Counsel) to assess its responsiveness to the Request and the applicability of the RTKL exemptions. The Department also submitted a Protected Records Log (Log).[6] In support of its arguments, the Department submitted affidavits of: Deputy Chief Counsel, Seamus Dubbs (Dubbs), Esquire (Dubbs Affidavit); Department Open Records Officer (ORO), Mary Beth Stringent (Stringent Affidavit); Assistant Counsel (Assistant Counsel), Veronica Hoof, Esquire; Assistant Counsel, Minh Le, Esquire; Assistant Chief Counsel (Assistant Chief Counsel), Michael Gennett, Esquire; Assistant Chief Counsel, Kurt Geishauser, Esquire; Department Deputy Secretary (Deputy Secretary) of Securities, Eric Pistilli; Deputy Secretary for Non-Depository Institutions, Timothy Knopp; and Deputy Secretary for Depository Institutions, Stacey Cameron.[7]

On March 7, 2025, Requester submitted a position statement, arguing therein, *inter alia*, that the Department had violated its statutory duty by denying public access to records of vital importance to the public. Requester further challenged each of the Department's denials under the RTKL and the Code. On March 31, 2025, Requester filed a Motion Requesting In Camera Review (In Camera Motion) with the OOR. On April 7, 2025, the Department filed a response to the In Camera Motion and a supplemental affidavit of Dubbs (Dubbs Supplemental Affidavit), which addressed the Department's good faith search.

---

[6] "The Log identified the following information: control number, email from, unified title, email to, email CC, email sent or file last modified date/time, relativity native type, RTKL responsiveness, and RTKL exception(s). The Log contained 4[,]681 columns." Final Det. at 3 n.7.

[7] The Affidavits were made subject to the penalties of unsworn falsification to authorities. *See* Section 4904 of the Crimes Code, 18 Pa.C.S. § 4904.

4

On April 16, 2025, the OOR asked Requester for additional time to develop the record and raised additional concerns regarding the Department's evidence. On April 17, 2025, Requester denied the OOR additional time to issue a Final Determination. On April 18, 2025, the OOR extended the submission period to April 22, 2025. On April 22, 2025, the Department submitted Dubbs' second supplemental affidavit (Dubbs Second Supplemental Affidavit), a supplemental Protected Records Log (Supplemental Log),[8] and a key log that identified individuals listed on the Supplemental Log.

On April 25, 2025, the OOR granted in part and denied in part, Requester's appeal and directed the Department to conduct a good faith search for records responsive to Item 38 and provide any responsive records. The OOR instructed that if the Department did not locate any such records, it was to provide an attestation or sworn affidavit to Requester confirming same. The OOR further directed the Department to provide email communications responsive to Item 38 that were not internal, predecisional deliberations. Requester appealed to this Court.[9]

---

[8] "The Supplemental Log also identified the following information: control number, email from, unified title, email to, email CC, email sent or file last modified date/time, relativity native type, RTKL responsiveness, and RTKL exception(s). In addition, the Supplemental Log contained attorney review comments, describing the contents of the records." Final Det. at 4 n.11.

[9] In appeals from final determinations of the OOR regarding RTKL requests submitted to Commonwealth agencies, this Court is the ultimate fact[-]finder, and [it] exercise[s] a *de novo* standard of review. Section 1301 of the RTKL, 65 P.S. § 67.1301. [This Court] accordingly do[es] not afford deference to the OOR's fact[-]finding or conclusions of law and may substitute [its] own in whole or in part. *Bowling v. Off[.] of Open [Recs.]*, . . . 75 A.3d 453, 474 ([Pa.] 2013); *W[.] Chester Univ[.] of [Pa.] v. Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013). [This Court] further exercise[s] the broadest scope of review over all justiciable issues raised and preserved below. *Bowling*, 75 A.3d at 477; *Payne v. [Pa.] Dep[']t of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020). In the event that [its] review requires further supplementation of the record, [this

5

Initially,

> [u]nder the RTKL, records in a government agency's possession are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. *Off. of the Dist. Att'y v. Bagwell*, 155 A.3d 1119, 1129 (Pa. Cmwlth. 2017). Because of this presumption, the agency has the burden of proving by a preponderance of the evidence that a record is exempt or privileged. *Am. Civ. Liberties Union v. Pa. State Police*, . . . 232 A.3d 654, 658 ([Pa.] 2020) (citing Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1)). A preponderance of the evidence is such evidence as would lead a fact[-]finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Bagwell*, 155 A.3d at 1130. The question of whether a record or document is exempt from disclosure is, thus, a factual one. *Bowling v. Off. of Open Recs.*, . . . 75 A.3d 453, 476 ([Pa.] 2013).

*Posey v. Dep't of Corr.*, 329 A.3d 864, 869 (Pa. Cmwlth. 2025).

Requester first argues that the Department did not satisfy its burden of demonstrating that the records it withheld are confidential under Section 302.A of the Code because it did not address whether they: (1) relate to institutions, credit unions, or licensees as required by Section 302.A(1) of the Code; or (2) are excluded by Section 302.A(2) of the Code as confidential based on their use by the Department in making an enforcement decision. The Department rejoins that the OOR correctly determined that the Department properly withheld records that are made confidential under Sections 302 and 501 of the Code.[10] The Department further retorts that the Request records are exempt from disclosure under Sections 302 and 501 of the Code because the records relate to the Department's ongoing investigation and

---

Court] may conduct a hearing or remand for the OOR to do so. *W*[.] *Chester Univ*[.], 71 A.3d at 1067 n.4.

*Se. Pa. Transp. Auth. v. Anderson*, 337 A.3d 575, 584 n.4 (Pa. Cmwlth. 2025).

[10] 71 P.S. § 733-501 (relating to Department orders).

administrative proceeding against TitleMax. *See* 71 P.S. § 733-302.A(2) (excluding records from public release that are "contained in or ascertained from any investigation made by the [D]epartment"); 71 P.S. § 733-501.B ("[T]he proceedings of the [D]epartment and its decisions regarding institutions shall not be published or divulged to anyone.").

Section 302.A of the Code provides, in relevant part:

(1) **This section applies to matters relating to institutions**, credit unions[,] and licensees.

(2) Neither the [Department's S]ecretary [(Secretary)] nor any deputy, examiner, clerk, or other employe of the [D]epartment, shall publish or divulge to anyone any information contained in or ascertained from any examination or investigation made by the [D]epartment, or any letter, report, or statement sent to the [D]epartment, or any other paper or document in the custody of the [D]epartment, **except when the publication or divulgement of such information is made by the [D]epartment** pursuant to the provisions of th[e Code], or when the production of such information is required by subpoena or other legal process of a court of competent jurisdiction, or **when it is used in deciding whether to prosecute or in prosecutions or other court actions instituted by or on behalf of or at the request of the [D]epartment**, or when referring for investigation to or in response to a request from any [f]ederal, [s]tate[,] or local law enforcement or any [f]ederal or [s]tate financial regulatory agency, including banking, insurance and securities regulatory agencies, or when the [D]epartment provides information to any [f]ederal or [s]tate financial regulatory agency, including banking, insurance and securities regulatory agencies, when the information pertains to an enforcement concern. The information shall be provided as may be necessary or appropriate, as determined in the discretion of the [S]ecretary.

71 P.S. § 733-302.A (emphasis added). Section 501.B of the Code mandates, in pertinent part: "Except as otherwise specifically provided in th[e Code], the

7

proceedings of the [D]epartment and its decisions regarding institutions shall not be published or divulged to anyone." 71 P.S. § 733-501.B.

Requester contends that the Department did not demonstrate that the withheld records relate to "institutions, credit unions[,] and licensees[,]" as Section 302.A(1) of the Code requires. 71 P.S. § 733-302.A(1). Specifically, Requester submits that Section 2 of the Code defines "institution" as a "corporation or a person, as defined in this section, or other type of business entity, including, but not limited to, a mutual holding company, which is or was subject to the supervision of the [D]epartment." 71 P.S. § 733-2. Requester asserts that because TitleMax does not conduct business activities in Pennsylvania, it is not subject to the Department's supervision.

However, "[t]he Department is the executive agency authorized to regulate financial services, including the administration and enforcement of the Consumer Discount Company Act (CDCA)[11] and what is commonly known as the Loan Interest Protection Law (LIPL)."[12] *Dep't of Banking & Sec. v. TitleMax of Del., Inc.* (Pa. Cmwlth. No. 417 M.D. 2017, filed Feb. 22, 2023) (single-Judge Opinion) (Cohn Jubelirer, P.J.), slip op. at 2 (footnotes omitted).[13] "Together, the CDCA and LIPL authorize the Department to regulate licensed and unlicensed lenders providing loans to citizens of the Commonwealth." *Id.* The OSC alleges that the TitleMax entities collectively entered into at least 5,270 agreements with Pennsylvania residents for loans of $50,000.00 or less and with interest rates that exceeded the 6% cap imposed by the LIPL. Thus, because the CDCA and LIPL authorize the Department to regulate lenders that provide consumer loans to

---

[11] Act of April 8, 1937, P.L. 262, *as amended*, 7 P.S. §§ 6201-6219.

[12] Act of January 30, 1974, P.L. 13, *as amended*, 41 P.S. §§ 101-605.

[13] This unreported single-judge opinion is cited as persuasive authority pursuant to Section 414(a), (b) of this Court's Internal Operating Procedures (IOP), 210 Pa. Code § 69.414(a), (b).

8

Pennsylvania residents, and the Department alleged in the OSC that the TitleMax entities entered into loan agreements with Pennsylvania residents, those entities are institutions under the Code.

Requester further argues that even if TitleMax is subject to the Department's supervision, because the records were used "in deciding whether to prosecute or in prosecutions or other court actions instituted by or on behalf of or at the request of the [D]epartment," they are excepted from Section 302.A(2) of the Code's confidentiality provisions. 71 P.S. § 733-302.A(2). However, the Department did not institute an *enforcement* action against TitleMax. The Department is seeking *civil penalties* and *restitution* expressly authorized by the LIPL, *see* Sections 505(b) and 506(c)(3) of the LIPL,[14] rather than prosecuting TitleMax. Further, such proceeding is not a *court action* under Section 31.3 of the General Rules of Administrative Practice and Procedure, but rather, a *matter or proceeding*. *See* 1 Pa. Code § 31.3 (definitions). Accordingly, the Department met its burden of demonstrating that the records it withheld are confidential under Section 302.A(2) of the Code.

Requester next argues that the Department's conclusory and blanket boilerplate invocation of the attorney-client privilege and attorney work-product doctrine (applied to thousands of records) did not satisfy its burden of demonstrating that each withholding was justified by the attorney-client privilege and attorney work-product doctrines. Requester contends that the OOR's conclusion that the Department demonstrated that certain records were protected under the attorney-

---

[14] 41 P.S. §§ 505(b) ("Any person who violates a provision of th[e LIPL] shall be subject to a fine levied by the [D]epartment of ten thousand dollars ($10,000[.00]) per offense."), 506(c)(3) (If a person violates a provision of the LIPL, the Department may "[o]rder the person to cease and desist any violation of th[e LIPL] and [] make restitution for actual damages to any aggrieved person.").

client privilege and/or the attorney work-product doctrine was incorrect because the Affidavits and Logs on which the Department relied were conclusory and failed to provide any detail regarding the nature of the allegedly privileged communications.

The Department rejoins that it produced a detailed Supplemental Log that reflects the date, record type, sender, the title of the email or document, the recipient, and the privilege the Department asserted. The Department further retorts that the information on the Supplemental Log is more than sufficient to substantiate the Department's privilege assertions in this case - for example, the Department asserted the attorney-client privilege over a record listed on the Supplemental Log with Control Number REL0000190807 (the log entry reflects an email sent by Assistant Counsel Alexander Korn, Esquire (Assistant Counsel Korn), to the Department's outside counsel in connection with the federal litigation commenced by TitleMax, Michael Pratt, Esquire, and to Chief Counsel Stefanie Hamilton, Esquire, the Log also reflects that the title of the email was TitleMax litigation No. 24 0032 (BNK-OSC)). The Department insists that the information in the Supplemental Log plainly shows a communication between the Department's attorneys and the Department's outside counsel for the purpose of obtaining legal assistance in the TitleMax matter. The Department asserts that it also withheld a document listed on the Log with control number REL0000010579.0001 pursuant to the attorney work-product doctrine (the Log entry reflects that the withheld record was a Microsoft Word file titled *TitleMax - Opposition to Motion for Stay.docx* that Assistant Counsel Korn drafted). The Department submits that the information reflected on the Supplemental Log shows that a Department attorney prepared the document in connection with the Department's pending administrative enforcement

proceeding against TitleMax. The Department emphasizes that this is the very essence of the attorney work-product doctrine.[15]

> This Court has explained:
>
> "The attorney-client privilege protects communications from the client to their attorney, and from the attorney to their client." *Mancini v. [Cnty.] of Northampton Pers[.] Appeals [Bd.]* (Pa. Cmwlth.[] No. 1292 C.D. 2022, filed June 7, 2024) (unreported),[16] slip op. at 9 . . . (citing *Bagwell*, 114 A.3d at 1124). "The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d at 216. A government agency is entitled to assert the attorney-client privilege. *Heavens v. [Pa.] Dep[’t] of Env[’t] Prot[.]*, 65 A.3d 1069, 1076-77 (Pa. Cmwlth. 2013).

*Bergere v. Pa. Dep’t of Cmty. & Econ. Dev.*, 331 A.3d 719, 726 (Pa. Cmwlth. 2025) (footnote omitted).

> Application of the attorney work[-]product [privilege] is described in [Pennsylvania Rule of Civil Procedure] 4003.3, which precludes "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research[,] or legal theories." [Pa.R.Civ.P. 4003.3.] In the RTKL context, the [privilege] protects the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation from disclosure.

---

[15] In addition, the Department maintains that Requester fails to challenge those assertions with respect to any of the specific records that the Department withheld.

[16] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's IOPs, 210 Pa. Code § 69.414(a).

> The work[-]product [privilege], while closely related to the attorney-client privilege, provides broader protection. The [privilege] protects any material prepared by the attorney in anticipation of litigation, regardless of whether it is confidential. The underlying purpose of the work[-]product [privilege] is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The purpose is not to shield mundane and uninforming entries in billing records, such as the bare fact that a telephone conference occurred.

*Janesch v. Pa. House of Representatives*, 299 A.3d 1030, 1039 (Pa. Cmwlth. 2023) (quoting *Levy v. Senate of Pa.*, 94 A.3d 436, 443 (Pa. Cmwlth. 2014) (internal citations and quotation marks omitted)).

The *Bergere* Court expounded:

> To meet its burden of proving that a record need not be disclosed under the RTKL, the agency may establish facts with affidavits or attestations. *Couloumbis* [*v. Senate of Pa.*], 300 A.3d [1093,] 1104 [(Pa. Cmwlth. 2023)]. Additionally, a privilege log listing "the date, record type, author, recipients, and a description of the withheld record[] can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." *McGowan* [*v. Pa. Dep't of Env't Prot.*], 103 A.3d [374,] 381 (Pa. Cmwlth. 2014). Importantly, "the attorney[-]client[] privilege must be asserted with respect to each question sought to be avoided or document sought to be withheld, rather than as a single, blanket assertion." [*Twp.*] *of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Cmwlth. 2018) (quotation omitted). If the party sustains its burden on the attorney-client privilege, the burden shifts to the opposing party to prove an applicable exception to the privilege. *Id.*

*Bergere*, 331 A.3d at 726 (footnote omitted).

The OOR explained:

> In support of the Department's position that it properly withheld records identified in its Supplemental Log as

subject to the attorney-client privilege and the attorney[ ]work[-]product doctrine, the Stringent Affidavit attests that the Department withheld those records that "consist of confidential legal communications between Department staff and attorneys within the Office of Chief Counsel, as well as outside counsel at Greenberg Traurig, LLP. These communications involve legal strategy, advice, and analysis related to pending litigation and regulatory matters." Stringent Affidavit, ¶ 9(f). Further, the Department's Supplemental Log describes the content of the responsive records.

Final Det. at 10.

The OOR concluded:

Here, the evidence submitted by the Department demonstrates that the records withheld under the attorney-client privilege or the attorney[ ]work[-]product doctrine were for the purpose of either seeking or providing legal advice or were prepared by Department counsel in anticipation of litigation and contain legal strategies, research, and analysis. *See generally*, Supplemental Log, columns 1-4[,]681. Further, nothing in the record suggests that these emails and email chains were sent for the purpose of committing a crime or tort. Thus, the OOR finds that the Department proved by a preponderance of the evidence that the withheld emails and email chains are protected from public access under the attorney-client privilege and attorney[ ]work[-]product doctrine.

Final Det. at 10. This Court discerns no error in the OOR's conclusion. Given the contents of the Stringent Affidavit and the Supplemental Log, this Court holds that the Department satisfied its burden of demonstrating that each withholding was justified by the attorney-client privilege and attorney work-product doctrines.

Requester next argues that the OOR's conclusion that the Department demonstrated that certain records related to a noncriminal investigation was incorrect because the Department did not provide any details regarding the nature of the particular records involved in its alleged noncriminal investigation or assert that these records were created during the course of the noncriminal investigation, as is

13

required to carry its burden. The Department rejoins that the OOR correctly determined that the Department properly withheld records that relate to the Department's noncriminal investigation into TitleMax, since Section 708(17) of the RTKL makes all information relating to a noncriminal investigation exempt from access.

Section 708(b) of the RTKL provides, in relevant part:

**Exceptions.**--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under th[e RTKL]:

. . . .

(17) A record of an agency relating to a noncriminal investigation, including:

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence and reports.

(iii) A record that includes the identity of a confidential source, including individuals subject to the [A]ct of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

(iv) A record that includes information made confidential by law.

(v) Work papers underlying an audit.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.

(B) Deprive a person of the right to an impartial adjudication.

(C) Constitute an unwarranted invasion of privacy.

14

(D) Hinder an agency's ability to secure an administrative or civil sanction.

(E) Endanger the life or physical safety of an individual.

65 P.S. § 67.708(b).

This Court has explained:

While Section 708(b)(17) [of the RTKL] clearly exempts from public disclosure "record[s] of an agency relating to a noncriminal investigation," the RTKL does not define "noncriminal" or "investigation." It is well settled that, "[w]hen a statute fails to define a term, the term's ordinary usage applies." *Educ*[.] [*Mgmt.*] [*Servs.*]*, Inc. v. Dep*[*'t*] *of Educ*[.]*,* 931 A.2d 820, 825-26 (Pa.Cmwlth.2007). Moreover, "[d]ictionaries provide substantial evidence of a term's ordinary usage." *Id.* [This Court] initially conclude[s] that the use of the word "noncriminal" in Section 708(b)(17) [of the RTKL] is intended to signal that the exemption is applicable to investigations other than those which are criminal in nature. This conclusion is supported by the fact that Section 708(b)(16) of the RTKL also exempts records "relating to or resulting in a criminal investigation." 65 P.S. § 67.708(b)(16). Thus, [this Court's] inquiry here is focused on determining the meaning of the term "investigation." Black's Law Dictionary does not define the term "investigation"; however, it defines the term "investigate" as follows: "1. To inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry. . . . 2. To make an official inquiry. . . ." Black's Law Dictionary 902 (9th ed. 2009). Webster's Third New International Dictionary defines the term "investigation" as follows: "1: the action or process of investigating: detailed examination . . . . 2. a searching inquiry: . . . an official probe. . . ." Webster's Third New International Dictionary 1189 (2002). Therefore, [this Court] conclude[s] that, as used in Section 708(b)(17) [of the RTKL], the term "investigation" means a systematic or searching inquiry, a detailed examination, or an official probe.

*Dep't of Health v. Off. of Open Recs.*, 4 A.3d 803, 810-11 (Pa. Cmwlth. 2010).

Requester contends that the Department's Affidavits and its Supplemental Log failed to provide any substantive explanation of how the noncriminal investigation exception applies to the records the Department withheld. The Department counters that Requester concedes that many of the records she has requested pertain to an ongoing administrative proceeding involving TitleMax. The Department emphasizes that every single Item in the Request appears to relate to the Department's administrative enforcement proceeding against TitleMax in one way or another. Given those facts, the Department insists that its Supplemental Log - which lists the date, record type, sender, recipients, title, and RTKL exemption - clearly shows that the Department properly withheld records requested that relate to the Department's noncriminal investigation of TitleMax in the OSC proceeding.

> The OOR illuminated:
>
> In support of its argument, the Stringent Affidavit asserts that "the Department is actively conducting or has previously conducted [noncriminal investigations]. These records include documents such as investigative materials, examiner notes, and reports that, if disclosed, could reveal the progress and/or result of investigations, all of which are exempt under the RTKL." Stringent Affidavit, ¶ 9(d). The Dubbs Second Supplemental Affidavit further affirms the contents of the Supplemental Log. The Department asserts that these records are "[e]mail communication[s] between Department examiner(s) regarding an ongoing non-criminal investigation." The subject of the records further involve "Title[M]ax," which, as indicated above, is subject to ongoing litigation and Department investigation. Accordingly, after a review of the evidence submitted, including the Supplemental Log, which identifies those records related to a noncriminal investigation, the OOR finds that the Department has met its burden of proof that the responsive emails that list "Pennsylvania Residents" as a sender/receiver are related to a noncriminal investigation. [See] 65 P.S. § 67.708(a)(1) [(relating to burden of proof)].

16

Final Det. at 16-17. This Court agrees with the OOR's conclusion. Because it is undisputed that the Department commenced an administrative enforcement proceeding against TitleMax by filing an OSC alleging that TitleMax committed thousands of violations of Pennsylvania's usury laws over a period of at least nine years by entering into high interest loan agreements with Pennsylvania borrowers, this Court holds that the OOR properly concluded that the Department demonstrated that certain records related to a noncriminal investigation.

Finally, Requester argues that the Department did not satisfy its burden of demonstrating that it conducted an adequate search without describing its methodology, without identifying the individuals who employed that methodology, and without affirming that the search included any repositories of non-email records, including audio messages and text messages, which were specifically included in the Request. The Department rejoins that the OOR correctly determined that the Department properly demonstrated that certain records either do not exist or are not within the Department's possession, custody, or control. The Department asserts an agency may fulfill its duty under the RTKL with a good faith and thorough inquiry to determine if it is in possession of the records requested, and that is exactly what the Department did here.

This Court has held:

> There is nothing in the RTKL or [Pennsylvania] case[]law requiring an agency to physically pore through its archives in pursuit of a hypothetical record that could be anywhere, or nowhere. To the contrary, [this Court] explained in *Hodges* [*v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011)], that an agency has no duty to perform an exhaustive search of all its files in order to retrieve a record of indeterminate location or classification. Rather, [this Court] held that the agency may fulfill its duty under the RTKL with "a good faith and thorough inquiry to determine if [it is] in possession of the records requested." [*Id.*] at 1191.

17

*Gray v. Phila. Dist. Atty's Off.*, 311 A.3d 1230, 1241 (Pa. Cmwlth. 2024).

The OOR explicated:

In support of its argument that it conducted a good faith search and that no additional records exist in its possession, custody or control, the Department submitted the Stringent Affidavit, authored by the Department's ORO, who attests that she is familiar with the records and "instructed employees of the Department and all likely custodians to conduct a search for responsive records." Stringent Affidavit, ¶¶ 3, 6. This search "included examining records in the Department's possession, custody, and control, as well as electronic records in the email folders of current and former employees likely to have responsive records." *Id*. [] ¶ 6. As a result of its search, the Department identified 3[,]981 responsive records in its possession, custody or control. *Id*. [] ¶ 7. Thus, the Department's ORO attests that the Department's search for responsive records to the Request "was thorough and made in good faith." *Id*. [] ¶ 13. The Dubbs Affidavit, authored by . . . Dubbs, further attests that he "was directly involved in the process to identify all documents that were responsive to [the R]equest and [is] personally aware of the content of all such records." Dubbs Affidavit, ¶ 6. [] Dubbs further asserts that "[a]ll custodians of the records received the [R]equest and were directed to search for any responsive records" and that "[a]ll potentially responsive [records] to the Request were forwarded to the [] Office of Chief Counsel for review." Dubbs Supplemental Affidavit, ¶¶ 6, 7.[] Thus, based on the search conducted by the Department, [] Dubbs determined that "the records requested in [Items] 27-28, 43-46, 48-51, and 54 do not exist, and the records requested in Items 17-19 are not in the Department's possession, custody, or control." *Id*. [] ¶ 9.

Final Det. at 19.

The OOR concluded:

Here, a review of the Department's evidence, specifically the Stringent Affidavit and the Dubbs Supplemental Affidavit, demonstrates that the Department met its burden of proving that it conducted a good faith search,

18

> identified those records responsive to the Request (i.e.[,] 3[,]981 records), that records responsive to Items 27-28, 43-46, 48-51, and 54 do not exist, that Items 17-19 are not in the Department's possession, custody[,] or control, and that it has no additional records responsive to the Request within its possession, custody[,] or control. There has not been sufficient evidence that contradicts the statements offered by the Department in the Affidavits submitted.

Final Det. at 19-20. This Court discerns no error in the OOR's conclusion. Accordingly, this Court holds that the Department satisfied its burden of demonstrating that it conducted an adequate search.

For all of the above reasons, the OOR's Final Determination is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Emily J. Mueller,           :
               Petitioner      :
                           :
           v.                   :
                           :
Department of Banking and    :
Securities (Office of Open      :
Records),                   :   No. 666 C.D. 2025
               Respondent    :

## O R D E R

AND NOW, this 7th day of May, 2026, the Office of Open Records' April 25, 2025 Final Determination is affirmed.

_____

ANNE E. COVEY, Judge